**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Juan SALINAS, Defendant-Appellant.**

No. 81–2083.

United States Court of Appeals,
Fifth Circuit.

Nov. 22, 1982.

Rehearing Denied March 21, 1983.

Stephen C. Tarry, Houston, Tex., for defendant-appellant.

John M. Potter, Asst. U.S. Atty., Houston, Tex., John Patrick Smith, Asst. U.S. Atty., Brownsville, Tex., William Torrey, Asst. U.S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before RUBIN and JOHNSON, Circuit Judges, and DAVIS *, District Judge.

JOHNSON, Circuit Judge:

Juan Salinas, convicted on both conspiracy and substantive counts of possession with intent to distribute heroin, has alleged that he was twice put in jeopardy for the same offense.[1] In briefing the double jeopardy issue, defendant Salinas' counsel argued that Rule 48(a) of the Federal Rules of Criminal Procedure had been infringed. Because we find an infraction of Rule 48(a), we do not reach the constitutional question of double jeopardy.

## I. *Background*

On May 6, 1980, Juan Salinas and Margarito Rodriguez Zamorano were named as co-conspirators in a four-count indictment alleging various drug-related offenses.[2] Initially, both defendants pleaded not guilty. Rodriguez subsequently pleaded guilty to a single count pursuant to a plea bargain.

On September 22, 1980, a jury panel consisting of twelve jurors and two alternates was selected to hear Salinas' case. During jury selection, the trial judge conducted a thorough examination of all potential jurors.[3] After each attorney exercised the right to strike certain members of the jury panel, a panel of twelve jurors and two alternates was selected. The jury was not sworn, but was given instruction to report for trial on October 1, 1980.

On the appointed date, October 1, 1980, both Salinas and the Government appeared in court ready for trial. The court then conducted a hearing, out of the presence of the jury, to determine whether Salinas was mentally competent to stand trial. Satisfied that the defendant was competent to stand trial, the court indicated that the trial was to ensue. After this hearing and still out of the presence of the jury, four witnesses were sworn; the Rule was invoked, requiring all witnesses to remain outside the courtroom; the judge ruled that the Government's case agent could remain in the courtroom during the entirety of the trial; finally, the judge denied Salinas' request that the Government's case agent be required to testify first. The court then took a brief recess prior to the presentation of evidence.

---

\* District Judge of the Western District of Louisiana, sitting by designation.

1. Salinas also raised two other points of error: (1) that he did not have effective assistance of counsel and (2) that the prosecutor's references to an accomplice's guilty plea constituted reversible error. Because we reverse on the basis of Fed.R.Crim.P. 48(a), we do not reach the merits of Salinas' primary contentions.

2. Count I—conspiring to possess with intent to distribute a quantity of heroin. Counts II and III—knowingly and intentionally distributing certain quantities of heroin. Count IV—knowingly and intentionally possessing, with intent to distribute, a quantity of heroin.

3. The Government's brief portrays the process as follows:

    *During jury selection, the trial judge conducted a lengthy and exhaustive examination of all the potential jurors, inquiring into the backgrounds of the panel and the relationship, if any, between the individual panel members and the interested parties in the case. At the conclusion of the examination, the judge accorded the Government's representative an opportunity to question the panel, but the prosecutor declined. The Government also declined to challenge any of the potential jurors for cause, but did exercise its right to strike certain members of the jury panel.*

During this brief recess, the Government moved to dismiss the indictment, and the court granted the motion. The only reason given by the Government for this motion was that "a superseding indictment will be sought." There is no record of a hearing on the motion, and neither the Government's motion nor the court's order indicate· the reasons for the dismissal of the first indictment. The court's order simply recites that the cause is dismissed "for the reason that the Government will seek a superseding indictment." When the unsworn jury returned to the courtroom, the court announced that the case had been dismissed and excused the jurors.

On October 7, 1980, a superseding four-count indictment against Salinas was filed. This second indictment was substantially similar to the first. The only difference of any significance in the second indictment was the naming of Rodriguez as a "co-conspirator, but not a co-defendant."[4]

The arraignment on the second indictment occurred approximately one week later, on October 16, 1980. At the arraignment, which was before a magistrate, there was some concern whether the defendant understood the nature · of the offense charged, and the Government's prosecuting attorney stated: "He knows exactly what he is charged with and he went to trial the other day on a very similar charge .... We have him down here on a writ, and he knows exactly what he is charged with here." Significantly, the Government's attorney then continued:

> Your honor, this is a superseding indictment. We were fixing to go to trial, and we did not go to trial because there were some people on the jury that knew him, and we were fixing to have a hearing and the judge was going to excuse them, but

in the meantime I filed a motion to dismiss the indictment, and we superseded, because I wasn't about to go to trial under .the circumstances. That's what happened.

It was on the second indictment that the jury returned a verdict of guilty on all four counts.

## II. Rule 48(a)

This case presents a question under Rule 48(a) of the Federal Rules of Criminal Procedure because the good faith of the prosecutor in moving to dismiss the first indictment is at issue. Rule 48(a) requires a prosecutor to obtain leave of court in order to terminate a prosecution by dismissal of an indictment. The first sentence of Rule 48(a) provides that "[t]he Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate." The question before this Court is whether the Government had a reason that will support dismissal under Rule 48(a).

### A. The "Leave of Court" Requirement

■ This Court has grappled with the interpretation of the "leave of court" requirement of Rule 48(a) before.[5] Without going into detail, a brief historical sketch would provide some background for our analysis.[6] At common law, the prosecutor had the unrestricted authority to enter a *nolle prosequi*[7] without the consent of the court at any time before the empaneling of the jury. A preliminary draft of Rule 48 adopted the common-law rule, adding the requirement that the prosecutor state his reasons for seeking a dismissal. The Supreme Court, however, added the words "leave of court" and deleted the require-

---

**4.** The Government never argued, either in the trial court or before this Court, that there was any substantive difference in the indictments.

**5.** *United States v. Hamm,* 659 F.2d 624 (5th Cir.1981) (*en banc*); *In re Washington,* 544 F.2d 203 (5th Cir.1976) (*en banc*), *rev'd sub nom. Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977); *United States v. Cowan,* 524 F.2d 504 (5th Cir.1975), *cert.*

*denied sub nom. Woodruff v. United States,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976).

**6.** For a more detailed history of the "leave of court" requirement, *see United States v. Cowan,* 524 F.2d 504 (5th Cir.1975).

**7.** That is, to declare he would not prosecute.

ment of a statement of reasons for dismissal. As amended by the Supreme Court, the rule was adopted by Congress.[8] A thorough examination of the history of Rule 48(a) led this Court in *Cowan* to conclude that the leave of court requirement was added to allow the courts to exercise discretion over the propriety of a prosecutorial motion to dismiss.[9] Although the Supreme Court has not delineated the circumstances in which this discretion may be exercised,[10] the courts have agreed that the primary purpose of the rule is protection of a defendant's rights: [11] "[t]he purpose of the rule is to prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy." *United States v. Cox*, 342 F.2d 167, 171 (5th Cir.1965), *cert. denied sub nom. Cox v. Hauberg*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).[12]

■ This prosecutorial harassment involves charging, dismissing, and subsequently commencing another prosecution at a different time or place deemed more favorable to the prosecution. *United States v. Ammidown*, 497 F.2d 615 (D.C.Cir.1974).[13] The key factor in a determination of prosecutorial harassment is the propriety or im-

propriety of the Government's efforts to terminate the prosecution—the good faith or lack of good faith of the Government in moving to dismiss.[14] The Government must not be motivated by considerations "clearly contrary to the public interest." [15]

## B. The Standard of Review

■ Because the prosecutor is presumptively the best judge of where the public interest lies, the initial determination of the public interest is for the prosecutor to make. Neither the trial court nor this Court on appeal can substitute its judgment for the prosecutor's determination or can second guess the prosecutor's evaluation. *United States v. Hamm*, 659 F.2d 624 (5th Cir.1981) (*en banc*).

■ In viewing the leave of court requirement in Rule 48(a) as a check on the absolute power of the executive branch, this Court stated: "The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless

---

**8.** *See Cowan*, 524 F.2d at 505 & 510.

**9.** Although in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 85 n. 15, 54 L.Ed.2d 207 (1977), the Supreme Court stated that the words "leave of court" were inserted without explanation, the Court recognized that these words "obviously vest some discretion in the court."

**10.** *Id.*

**11.** The only controversy is whether the rule also encompasses protection of the public interest. *See, e.g., In re Washington*, 544 F.2d 203 (5th Cir.1976) (*en banc*), *rev'd on other grounds sub nom. Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977).

**12.** The dissent in *Cox* was in full agreement with the majority that "Rule 48(a) was primarily intended to authorize the court to protect defendants." *Cox*, 342 F.2d at 179.

**13.** Although Rule 48(a) did not apply to the case at bar, the Court in *Ammidown* found it useful by analogy in a discussion of the respective roles of judge and prosecutor.

**14.** *Rinaldi*, 98 S.Ct. at 85.

**15.** Most of the cases talk in terms of the public interest test, *i.e.*, whether the prosecutor's decision to terminate the prosecution was "clearly contrary to the manifest public interest." *See, e.g., Rinaldi*, 98 S.Ct. at 85–86; *Cowan*, 524 F.2d at 511–13. The public interest standard evolved due to the fact that many courts have interpreted the rule as protecting the public interest as well as the defendant's interest. Technically speaking, this opinion does not have to discuss the "public interest" standard because the facts in the instant case indicate that the dismissal was for the purpose of harassing Salinas. "It has frequently been observed that if the prosecutor is motivated by a desire to harass the defendant, leave [to dismiss the indictment] should be withheld." *In re Washington*, 544 F.2d at 212 (dissenting opinion) (*see also United States v. Cox*, 342 F.2d 167 (5th Cir.1965). This Court need not distinguish the "prosecutorial harassment" case from the "public interest" case since the basis of the public interest test is the motivation underlying the Government's motion to dismiss. It is obvious that the public interest is not served by harassing a defendant.

clearly contrary to manifest public interest." *Cowan,* 524 F.2d at 513. In *United States v. Hamm* this Court found that the motion to dismiss the indictment should be granted "unless the trial court has an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest." 659 F.2d at 631. Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest,[16] the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than "a mere conclusory interest."[17] *Id.* at 631 n. 23. The presumption that the prosecutor is the best judge of the public interest is rebutted when the motion to dismiss contravenes the public interest because it is not made in good faith. In such a case, Rule 48(a) mandates that the court deny the Government's motion to dismiss the indictment: "under the discretion yielded to [the court] by 48(a) to 'check [an] abuse of Executive prerogative,' the court can and must deny the motion to dismiss." *In re Washington,* 544 F.2d at 209, *rev'd on other grounds,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (citation omitted).

## C. The Prosecutor's Motivation

■ In applying this standard of review to the facts of the instant case, this Court begins with the presumption that the prosecutor acted in good faith in moving to dismiss the first indictment. That presumption is rebutted upon a showing of a lack of good faith. We turn to the record for evidence of the prosecutor's motivation. In the first place, the prosecutor in this case surely gave the district court nothing more

than a "mere conclusory interest"—a superseding indictment would be sought—as a basis for dismissal of the indictment. With full recognition that the burden is not on the prosecutor to prove that dismissal is in the public interest, this Court determines that such an unsupported conclusory reason as the seeking of a superseding indictment is insufficient in and of itself to support a dismissal under Rule 48(a). The prosecutor abused the confidence of the district court by offering the seeking of a superseding indictment as a "reason" for dismissal. Crediting the Government with a good faith motive, the district court granted the motion to dismiss.[18]

It was not until the arraignment on the second indictment that the lack of good faith on the part of the Government first became evident. At that time the prosecutor stated: "We were fixing to go to trial, and we did not go to trial because there were some people on the jury that knew him, ... I wasn't about to go to trial under the circumstances." This statement by the prosecutor raised a clear inference of absence of good faith on the part of the Government—an inference the Government never attempted to rebut either in its brief or in oral argument to this Court. In fact, when asked during oral argument before this Court if it was the Government's position that the reasons for dismissal of the first indictment were as given in the record, the Government attorney responded, "I would assume so, your honor, ... I would certainly assume that it was the case."

The reflection of the record is specific and dramatic. The Government was simply displeased with the selected jury because

16. *Hamm,* at 631 n. 23.

17. The District of Columbia Circuit in *United States v. Ammidown* stated:

[T]he court will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis.... The rule contemplates exposure of the reasons for dismissal "in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors," and in pursuance of this purpose "to gain the Court's favorable discretion, it should be satisfied that the reasons

advanced for the proposed dismissal are substantial."
497 F.2d at 620. This Court in *Hamm* did not reject the principles enunciated in *Ammidown.* Rather, the *Hamm* opinion refused to read this language in *Ammidown* as placing the burden on the prosecutor to prove that dismissal is in the public interest.

18. The only affirmative reason the district court had to believe that the dismissal motion was motivated by considerations contrary to the public interest was the absence of anything other than a conclusory reason for dismissal.

there were people on it that the Government believed knew the defendant. This was the only reason ever proffered by the Government for its dismissal of the first indictment. This reason, we believe, was inadequate and improper under Rule 48(a). One week later the Government obtained a second indictment of Salinas in order to get a "better" jury, a jury more to its liking. It is apparent, therefore, that the Government used Rule 48(a) to gain a position of advantage or "to escape from a position of less advantage in which the Government found itself as the result of its own election." [19] The Government decided to "repudiate the whole proceeding it had initiated" [20] rather than to utilize other avenues that were available: (1) hold a hearing on the Government's allegations that some of the jurors knew the defendant, (2) conduct additional voir dire, (3) utilize one or both of the alternate jurors who had been selected, or (4) challenge the jurors for cause. In short, the Government was not content with the prospect of trying the case to the chosen jury and trifled with the Rules of Criminal Procedure to harass defendant Salinas.[21] For this Court to condone such conduct would "invite future misconduct by the Government" [22] and "open the door to the possibility of grave abuses." [23]

### III. *Conclusion*

The record in this case reveals sufficient evidence to overcome the presumption that the Government made the motion to dismiss the indictment in good faith. Faced with discontent with the jury as the Government's sole reason for dismissal, this Court has no choice but to vindicate the purpose of Rule 48(a) to protect the defendant's rights. The record on appeal exposed that the true reason for dismissal was in derogation of defendant Salinas' rights. After the district court placed its confidence in the Government by granting the motion to dismiss the indictment, the Government's lack of good faith became evident. Because of the improper motives of the Government in moving to dismiss the first indictment, the conviction is reversed.

REVERSED.

---

19. The dissenting opinion in *Parr v. United States,* 225 F.2d 329, 337 (5th Cir.1955) (Cameron, J., dissenting), *aff'd on other grounds,* 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956), recognized the potential for prosecutorial abuse of Rule 48(a). [The majority opinion in *Parr* did not discuss standards for dismissal under Rule 48(a). This Court held that a Rule 48(a) motion to dismiss is not a final order, and, therefore, not appealable; the Supreme Court affirmed on this basis, stating that the propriety of the dismissal is reviewable on appeal from a conviction on the new indictment.] [The Supreme Court's holding in *Parr* has been vitiated by the fact that the Court sustained an appeal in *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).]

20. *Id.* at 338.

21. Double jeopardy jurisprudence has recognized the need to protect the interest of an accused in retaining a chosen jury. *See Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 2161 & 2162, 57 L.Ed.2d 24 (1978). The Supreme Court in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) stated that "[t]he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, . . . ."

22. *In re Washington,* 544 F.2d at 209.

23. *Parr,* 225 F.2d at 338 (dissenting opinion).