**STATE of Missouri, Respondent,**

v.

**Leslie LOMAX, Appellant.**

**No. 46893.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 29, 1986.

Motion for Rehearing and/or Transfer Denied June 4, 1986.

Application to Transfer Denied July 15, 1986.

Fabbri & Zotos, Nick A. Zotos, St. Louis, for appellant.

William L. Webster, Atty. Gen., John Morris, Paul Larose, Asst. Attys. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Defendant, Leslie Lomax, appeals from his conviction, after a jury trial, for capital murder. He was sentenced to life imprisonment without possibility of probation or parole for fifty years. We affirm.

Defendant does not challenge the sufficiency of the evidence. From the evidence, the jury reasonably could have found that defendant, acting with others, murdered Gregory Erson, an undercover police officer who was working a prostitution detail in a high crime area in St. Louis known as the "Stroll."

Defendant first contends that the trial court erred in overruling his motion to dismiss the present charge against him based on double jeopardy. At defendant's first trial the prosecutor entered a memorandum of nolle prosequi after four days of voir dire but before the jury was sworn. Shortly thereafter, defendant was re-indicted and re-tried, resulting in this conviction. Defendant also argues that the jeopardy problem was exacerbated by the fact that the prosecutor tried to goad defense counsel into requesting a mistrial by asking improper questions during the voir dire in the first trial.

After an order of nolle prosequi is filed, prosecution ceases. The charge may be brought again as long as the accused is not placed in double jeopardy. *State v. Lawson*, 630 S.W.2d 185, 189 (Mo.App.1982). Jeopardy attaches in a jury trial when the jury has been impaneled and sworn. *State v. Harrold*, 626 S.W.2d 260, 261 (Mo.App. 1981). Defendant acknowledges this fact and cites no authority to the contrary. In the first proceeding, the prosecutor filed a nolle prosequi before the jury was sworn, with the result that double jeopardy did not attach so as to bar this subsequent proceeding.

Defendant's argument regarding prosecutorial overreaching during the first trial is academic. Defendant never requested a mistrial and the proceeding was aborted by the nolle prosequi. Defendant's first point is denied.

Defendant next contends that the trial court erred in denying his request that the jury panel be quashed after the prosecutor told the veniremen that the charges against a co-defendant, David Bryant, had been dismissed. The trial court sustained an objection to the prosecutor's comments and instructed the jury to disregard them.

A mistrial is a drastic remedy, the granting of which is vested in the sound discretion of the trial court, which is in the best position to determine what, if any,

impact the statement had on the jury panel. *State v. Williams,* 664 S.W.2d 226, 228 (Mo.App.1983). Such a remedy should be granted only when the incident is so grievous that prejudice cannot be removed in any other way. *State v. Baker,* 630 S.W.2d 111, 114 (Mo.App.1981). Not every instance in which the prosecutor exceeds the limits of proper comments during voir dire mandates a mistrial. To warrant a mistrial, prosecutorial remarks must be not only improper but also prejudicial to defendant under the facts and circumstances of the particular case.

■ In this case, the trial court sustained the objection and took corrective action to purge the prejudicial effect, if any, upon the jury. We have carefully reviewed the record and find no abuse of the trial court's discretion. In so ruling, we do not reach the question of whether the prosecutor's comments were proper retaliation to statements which defense counsel had made earlier to the jury panel. Defendant's second point is denied.

The judgment of the trial court is affirmed.

SATZ, J., concurs.

PUDLOWSKI, concurs in separate opinion.

PUDLOWSKI, Judge, concurring.

I concur in affirming the conviction in the present case. I write a concurring opinion to address my concern about the prosecutor's unbridled discretion to enter a memorandum of nolle prosequi before the attachment of double jeopardy at the time the jury is impaneled and sworn.

A nolle prosequi is an entry of record that the prosecutor will proceed no further and constitutes the termination of a particular prosecution. 22A C.J.S. *Criminal Law,* Section 456 at 1 (1961). At common law, the Attorney General of England could enter a nolle prosequi without explanation or the consent of the court. *Regina v. Allen,* 1 Best & S. 850 (Q.B.1862). This absolute power was derived not from substantive law but from the very ancient practices and prerogatives of the Attorney General who served as the sovereign's personal representative in all prosecutions. *People ex rel. Elliott v. Covelli,* 415 Ill. 79, 112 N.E.2d 156, 160 (1953). The court's function to enter the nolle prosequi on the rolls was purely ministerial.

> This was so because the sovereign, personified in the King, was theoretically the only party interested in the prosecution. The prosecutor and his supervisor, the Attorney General, were agents of the King, answerable only to him. If the agent of the sovereign desired that a prosecution should cease, that was the end of the matter. The public subjects had no interest and could not be heard to complain.

*State ex rel. Skinner v. Dostert,* 278 S.E.2d 624, 629 (W.Va.1981).[1]

Although the American constitutional system changed the operative theory of sovereignty and vested the powers and prerogatives of the King of England at common law in the people, the prosecutors in this country continued to exercise the same absolute power to enter a nolle prosequi. In 1869, the United States Supreme Court stated:

> Public prosecutions, until they come before the court to which they are returnable, are within the exclusive discretion of the District Attorney, and even after

---

**1.** In *People v. Dennis,* 164 Colo. 163, 433 P.2d 339, 340 n. 1, (1967), the Supreme Court of Colorado cited the following colloquy recorded in 3 Lord Campbell, The Lives of the Chief Justices of England 59 (7th ed. 1878). In this discussion, Lacy, a friend of an accused came to Lord Chief Justice Holt to plead for him.

> The Chief Justice, having ordered Lacy in and demanded his business was thus addressed: 'I come to you a prophet from the Lord God, who has sent me to thee, and would have thee grant a *nolle prosequi* for John Atkins, his servant, whom thou has sent to prison.'
> Holt, C.J.: 'Thou art a false prophet, and a lying knave. If the Lord God had sent thee, it would have been to the Attorney General, for He knows that it belongeth not to the Chief Justice to grant a *nolle prosequi* ...'

they are entered in court, they are so far under his control that he may enter a *nolle prosequi* at any time before the jury is impaneled for the trial of the case...

*The Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457, 19 L.Ed. 196, 197 (1869). This same view prevails in Missouri where our courts consistently hold that the judge has no participation in a nolle prosequi and such right lies within the sound discretion of the prosecuting attorney. *State ex rel. Griffin v. Smith*, 363 Mo. 1235, 258 S.W.2d 590 (banc 1953); *State ex rel. Dowd v. Nangle*, 365 Mo. 134, 276 S.W.2d 135 (banc 1955).

Today, in most jurisdictions, however, the decision to dismiss a pending prosecution can no longer be made by the prosecutor alone. In 1944, Rule 48(a) of the Federal Rules of Criminal Procedure changed the existing common law by requiring the Attorney General or the United States attorney to obtain leave of court to terminate a prosecution by dismissal of an indictment, information, or complaint. Federal courts examining the history of Rule 48(a) have concluded that the primary purpose of the "leave of court" requirement is to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging another prosecution at a different time or place deemed more favorable to the Government. *Rinaldi v. United States*, 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 85 n. 15, 54 L.Ed.2d 207 (1977); *United States v. Salinas*, 693 F.2d 348, 351 (5th Cir.1982). Rule 48(a) was also construed to preserve the judiciary's essential function of protecting the public interest in the evenhanded administration of criminal justice. *United States v. Cowan*, 524 F.2d 504, 512 (5th Cir.1975). By including the "leave of court" requirement, Rule 48(a) served to modify and condition the Executive's pre-

rogative to terminate a prosecution by erecting a judicial check on the abuse of that power. *Id.* at 513.

Most jurisdictions in the United States, by rule or statute, have similarly checked the unfettered power of the prosecutor at common law to enter a nolle prosequi. Indeed, prior to the adoption of Rule 48(a), more than thirty states had modified the common law to give the courts a responsible role in the dismissal of a criminal prosecution. *Cowan*, 524 F.2d at 509–510. These limitations on the prosecutor's dismissal power vary:

> The prosecutor may file a dismissal ... only with the "consent of the court," "leave of court," or "permission of the court;" a prosecution may be dismissed by the court on motion of the prosecutor; a prosecution may be dismissed by the court on its own motion; or a prosecution may be dismissed by the court either on its own motion or upon the application of the prosecutor.

1 Wharton's Criminal Law, Section 60 at 313–314 (14th ed. 1978) (footnotes omitted).[2]

Other states have treated the limitation on the prosecutor's discretion to dismiss as a development arising from the application of the common law to the American experience. In Illinois, the supreme court held that the consent and the approval of the court is required before the state's attorney may enter a nolle prosequi to any charge. *People ex rel. Hoyne v. Newcomer*, 284 Ill. 315, 120 N.E. 244, 248 (1918); *People v. Mooar*, 92 Ill.App.3d 852, 48 Ill. Dec. 186, 188, 416 N.E.2d 81, 83 (1981). Likewise, in West Virginia, the decision to grant or deny a motion to nolle prosequi is also a judicial function because the prerogatives of the Attorney General of England

---

**2.** *See* Ariz. Rules of Crim.Pro., Rule 16.7(a); Colo. Rules of Crim.Pro., Rule 48(a); Ga.Code Ann., Section 27–1801; Idaho Code, Section 19–3504; Ky.Rules of Crim.Pro., Rule 9.64; Mich. Stat.Ann., Section 28.981; Miss.Code Ann., Section 99–15–53; Rev.Code of Mont.Ann., Section 95–1703(1); S.D.Comp.Laws Ann., 23–34–7; Tenn.Rules of Crim.Pro., Rule 48; Utah Code

Ann., Section 77–51–4; Vt.Rules of Crim.Pro., Rule 48(b); W.Va.Code, Section 62–2–25; Wyo. Rules of Crim.Pro., Rule 45(a). *See also* Cal.Penal Code, Section 1385; Iowa Code Ann., Section 813.2, Rule 27; N.Y. Crim. Pro. Law, Section 210.40; Okl.Stat.Ann., tit. 22, Section 815; Or.Rev.Stat., Section 134.150.

at common law are no longer germane to the American constitutional system. *Dostert,* 278 S.E.2d at 629. *Cf. Covelli,* 112 N.E.2d at 159–161 (the Attorney General of Illinois, who has all the powers coincidental to the Attorney General of England at common law, has the sole discretion to enter a nolle prosequi, subject to the limitation against capricious and vexatious repetitions).

Having presented a brief overview of the law concerning the prosecutor's discretion to enter a nolle prosequi, I address its use in the present case.

In the appellant's first prosecution for capital murder, voir dire commenced on August 3, 1981. On August 6, 1981, after four days of jury selection, voir dire concluded and the state made its strikes and submitted them to the bailiff. Appellant's counsel also made his strikes. The peremptory challenges exercised by the state were used to strike nine black jurors. Thereafter, court reconvened and the jury was impaneled. The racial composition of the jury was nine blacks and three whites. Before the jury was sworn, the assistant circuit attorney asked leave to approach the bench and then filed a nolle prosequi. He gave no explanation or reason for his decision to dismiss the prosecution. After a discussion at the bench, the court reluctantly discharged the appellant. Five days later, on August 11, 1981, the appellant was reindicted on the charge of capital murder.

During his second prosecution but before his trial, the appellant's counsel sought to disqualify the assistant circuit attorney trying the case. He was the same assistant circuit attorney who entered the nolle prosequi. At the hearing on the motion, the appellant's counsel brought to the court's attention newspaper articles wherein the Circuit Attorney and the assistant circuit attorney discussed the reasons for nolprossing the original case, *i.e.,* they decided the jury that had been selected was pro-defense, that the proceedings had been defense oriented, and that the state would not get a fair trial. At the hearing, the assistant circuit attorney in question did not deny the articles but made the following response:

The fact of the matter was that in my opinion I felt the State was not getting a fair trial and as a duly appointed representative of the people of the State of Missouri, City of St. Louis, it was my obligation to see as best I could, to determine that they did get a fair trial. That's why I dismissed the case and for no other reason.

In the present case, the state used its absolute power to enter a nolle prosequi to deliberately circumvent a duly selected jury, albeit one the state disliked, in order to subsequently reindict the appellant in hopes of a more favorable jury later. In *United States v. Salinas,* 693 F.2d 348 (5th Cir.1982), the Government dismissed the defendant's original indictment under Rule 48(a) because the jury which was selected included jurors who knew the defendant. The Fifth Circuit concluded that the Government had used the rule to escape from a position of less advantage in which the Government had found itself as the result of its own jury selection. *Id.* at 353. These circumstances were sufficient for the court to conclude that the Government had acted in bad faith and had committed prosecutorial harassment. *Id.*

In the present case, the state's actions were in derogation of the appellant's rights and tantamount to a lack of good faith. Double jeopardy jurisprudence recognizes the need to protect a defendant's interest in retaining a chosen jury. *Crist v. Bretz,* 437 U.S. 28, 36–38, 98 S.Ct. 2156, 2161–2162, 57 L.Ed.2d 24 (1978). By entering the nolle prosequi as it did, the state demonstrated its disregard and indifference to the jury selection process. The state's actions also raised a question of fundamental fairness. In this instance, the state's absolute power to enter a nolle prosequi before the jury was sworn served to give the state a second chance to select a jury, a right the appellant did not have. Moreover, the difference between entering a nolle prosequi before the jury is sworn and entering it afterward is a very fine one, except for

double jeopardy purposes. It would certainly be unrecognizable to the appellant who had sat in a court room during four days of voir dire and watched a jury being death qualified.

Further, the prosecutor's power to enter a nolle prosequi at will is incongruous to our system of law and government, a system built on the foundation of checks and balances.

> If there is one aspect of the doctrine of Separation of Powers that the Founding Fathers agreed upon, it is the principle, as Montesquieu stated it: "To prevent the abuse of power, it is necessary that by the very disposition of things, power should be a check to power." Taking their institutions as they found them, the framers wove a web of checks and balances designed to prevent abuse of power, regardless of the age, origin, and character of the institution.

*United States v. Cox,* 342 F.2d 167, 190 (5th Cir.1965). (footnote omitted). Because our legal and governmental system assumes the need for checking human frailties, I do not think the decision of the prosecutor to enter a nolle prosequi should be immune to review by the courts. *See* K.C. Davis, *Prosecutorial Discretion, reprinted in* The Judicial Process: Readings, Materials and Cases 773 (Aldisert ed. 1978). In this case, the prosecutor's actions were tantamount to an abuse of prosecutorial discretion. His absolute power to enter a nolle prosequi enabled the state to do indirectly what it could not do directly, *i.e.,* supplant a duly selected jury for the opportunity to chose a more favorable panel later. Under these circumstances, judicial review should have been available to ensure that the prosecutor's actions were not arbitrary, capricious, or an abuse of discretion. Certainly, the powers and prerogatives of the Attorney General of England under the common law no longer serve as a sufficient justification for the prosecutor's present broad powers. *See* Section 1.010, RSMo 1978.

In conclusion, I write not to take away the authority of the prosecutor to enter a nolle prosequi before the jury is sworn. There are many instances in the course of a prosecution where such an entry is necessary; there are also instances where it is not. I write that this absolute power may someday be tempered in this state by judicial review authorized by court rule or statute.