**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5982

KITTRELL BERNARD DECATOR,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4371

KITTRELL BERNARD DECATOR,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frank A. Kaufman, Senior District Judge.
(CR-95-202-K)

Argued: March 6, 1997

Decided: May 6, 1997

Before HAMILTON, and WILLIAMS, Circuit Judges, and
KISER, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded in part by unpub-
lished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Schatzow, VENABLE, BAETJER & HOW-ARD, L.L.P., Baltimore, Maryland, for Appellant. James G. Warwick, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In December 1995, a jury convicted Kittrell Bernard Decator of conspiracy to commit bank robbery, see 18 U.S.C.A. § 371 (West 1966 & Supp. 1997); armed bank robbery, see 18 U.S.C.A. § 2113(a) (West Supp. 1997); attempted armed bank robbery, see 18 U.S.C.A. § 2113(f) (West Supp. 1997); and two counts of using or carrying a firearm during the commission of a crime of violence, see 18 U.S.C.A. § 924(c) (West Supp. 1997). Additionally, the district court found Decator guilty of criminal contempt during the trial. The district court imposed concurrent sentences of 77 months for the conspiracy, robbery, and attempted robbery convictions. The court sentenced Decator to 20 years for each of the two firearms convictions, and 6 months for the criminal contempt. These three sentences were to run consecutively to each other and to the 77-month concurrent sentences. Decator noted timely appeals from his convictions and sentences on the five conspiracy-related counts and from his criminal contempt conviction. We have consolidated the two appeals.

Decator asserts that the underlying indictment, upon which his robbery, firearms, and conspiracy convictions were based, should have been dismissed with prejudice due to prosecutorial misconduct, thus vacating the convictions. Decator also claims that he is entitled to a

2

new trial because the district court erroneously denied various motions to suppress physical evidence and statements he made, and erroneously denied his request for a jury instruction on single versus multiple conspiracies. Decator also challenges his 77-month concurrent sentences for conspiracy, bank robbery, and attempted bank robbery. In addition, he challenges his criminal contempt conviction. After a careful review of the briefs and record, and after hearing oral arguments from counsel, we affirm Decator's convictions, but remand for resentencing on the conspiracy, robbery, and attempted robbery convictions.

I.

During the summer of 1993, Decator, Craig Lamont Scott, Keith E. Bryant, and Jonathan Mark Jones agreed to rob a bank to obtain funds to finance the development of an entertainment company. In anticipation of the robbery, the four men had regular practice sessions, obtained a layout of the Maryland National Bank on York Road in Baltimore County, Maryland, conducted surveillance, and selected getaway routes. On September 21, 1993, the defendants, armed with guns, entered the bank and stole approximately $290,000 in cash. In November 1993, I.C. Entertainment, Inc. was established. By April 1994, however, the company and the individual defendants began experiencing financial difficulties. As a result, the group decided to rob another bank to satisfy their individual debts and those of I.C. Entertainment. On June 6, 1994, Decator, Scott, and Bryant botched a robbery of the First National Bank on Woodlawn Drive in Baltimore County.[1] However, two days later, Decator, Scott, and Jones successfully stole $117,000 from the same Maryland National Bank they had robbed nine months earlier. Bryant remained in his apartment during the robbery, readying items for cleaning the money should the bank's dye packs explode. Fortunately, a witness became suspicious when he observed the three men fleeing the scene of the robbery and obtained the getaway vehicle's license plate number. The police discovered that the vehicle was registered to Decator. They then surveilled Decator's residence where they arrested Decator and Jones when they returned to the residence in a rented vehicle later that

_____

[1] Jones helped plan the robbery of the First National Bank, but was unable to participate because he was recovering from a stab wound.

3

afternoon. The rented vehicle was impounded and a subsequent search of the vehicle revealed two .9 mm pistols, a dye-stained latex glove, a loaded revolver that had been taken from the bank guard during the June 8 robbery, and various articles of clothing matching the description given by witnesses of what the robbers wore during the heist. A digital beeper recovered from Decator was subsequently activated and led police to Scott, who was leaving a nearby hotel. He had been cleaning the stolen money which had been stained when the bank's dye-packs had exploded. Bryant was not identified and arrested until months later.

In July 1994, Decator, Jones, and Scott were charged in a seven-count indictment with conspiracy to commit bank robbery (count 1), a September 21, 1993 armed bank robbery (count 2), a June 6, 1994 attempted armed bank robbery (count 4), a June 8, 1994 armed bank robbery (count 6), and using and carrying a firearm during the commission of a crime of violence (counts 3, 5 and 7). Each defendant pleaded not guilty and moved for severance of counts and defendants. The district court agreed to sever Jones's trial from the remaining defendants. The court ordered Decator and Scott tried jointly, but severed the counts so that the joint trial was for the June 8 robbery and the related firearms charge only.[2]

During the course of the November 1994 trial, the Government moved to dismiss without prejudice the remaining five charges (counts 1, 2, 3, 4, and 5) against Decator and Scott, which had been severed from the two counts being tried. After a lengthy discussion, both Decator and Scott consented to the dismissal without prejudice, and the district court granted the motion. The court required, however, that the Government make an election regarding reinstatement of the charges by March 15, 1995. On March 15, the district court granted the Government's ex parte motion for an extension of time to reindict to May 5, 1995. On May 4, 1995, the grand jury returned an indictment against Decator, Scott, and a fourth defendant, Bryant. The

_____

[2] Decator and Scott were both convicted of the June 8 bank robbery and related firearms charge. Decator was sentenced to 87 months imprisonment for the robbery charge and 5 years, consecutively, for the firearms offense. Their appeals are presently pending before another panel of this court. See United States v. Decator, No. 95-5207(L).

4

indictment charged Decator and Scott with the September 21 robbery, the June 6 attempted robbery, two related firearms charges, and conspiracy -- the identical five charges that previously had been dismissed. Bryant was charged with the September 21 and June 8 bank robberies, the June 6 attempted robbery, three related firearms charges, and conspiracy.

Decator and Scott moved to dismiss the second indictment based on prosecutorial misconduct and the Government's failure to reindict by the district court's original March 15 deadline. Although the district court denied their motion, the court granted Scott and Bryant's motion for severance of defendants and ordered Decator tried separately.**3** On December 6, 1995, a jury found Decator guilty of all five counts. In addition, the district court found Decator guilty of criminal contempt after a verbal outburst during the delivery of the verdict.

II.

As noted, Decator raises numerous issues on appeal. He challenges the district court's failure to dismiss the second indictment, the admissibility of certain evidence, the failure to give a requested jury instruction, his sentencing, and the basis of his criminal contempt conviction. We address each argument in turn.

A.

Decator appeals the district court's denial of his motion to dismiss the second indictment. He contends that the Government acted in bad faith when it moved for a dismissal without prejudice of counts 1, 2, 3, 4, and 5 of the first indictment. He argues that the only adequate remedy is dismissal of the second indictment and subsequent reversal of the convictions. Cf. United States v. Derr , 726 F.2d 617, 619 (10th Cir. 1984) (dismissing second indictment, thereby effectively altering first dismissal to one with prejudice after finding prosecutor failed to articulate reasons for first dismissal); United States v. Salinas, 693 F.2d 348, 353 (5th Cir. 1982) (reversing convictions arising from

_____

**3** In October 1995, Bryant and Scott were found guilty on all counts charged.

5

reindictment after finding that the Government had moved for dismissal of original indictment in bad faith). We review the district court's disposition of the Government's motion to dismiss the indictment for abuse of discretion. See United States v. Smith, 55 F.3d 157, 158 (4th Cir. 1995).

The Federal Rules of Criminal Procedure require a prosecutor to obtain leave of court to terminate a prosecution by dismissal of an indictment. See Fed. R. Crim. P. 48(a)."The principal object of the `leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." Rinaldi v. United States, 434 U.S. 22, 29 n.15 (1977); see also Smith, 55 F.3d at 158-59 (quoting United States v. Cowan, 524 F.2d 504, 509-11 (5th Cir. 1975)). Although the prosecution must obtain leave of court, the district court has limited discretion in considering the Government's motion to dismiss. As this Court has held:

> The disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal. A motion that is not motivated by bad faith is not clearly contrary to manifest public interest, and it must be granted.

Smith, 55 F.3d at 159. As a result, unless the prosecutor's motivation was contrary to the public interest, e.g.,"the prosecutor's acceptance of a bribe, personal dislike of the victim, [or] dissatisfaction with the jury impaneled," id., the district court must grant the motion to dismiss.

On appeal, Decator contends that the Government sought dismissal of the initial indictment in bad faith. Specifically, he contends that the Government abused the grand jury process when it obtained the first indictment knowing that it lacked evidence to sustain the five counts it later sought to dismiss, and thereafter improperly induced Decator's consent to the dismissal by failing to disclose the insufficiency of its evidence. Decator bases his allegations of prosecutorial misconduct on two statements submitted by the Government to the district court

6

in pretrial memorandums. He contends that these"admissions," made subsequent to the grant of the dismissal, are conclusive evidence that the Government sought dismissal of the initial indictment in bad faith. First, Decator points to the Government's statement in its ex parte motion that it moved to dismiss the five counts against Decator because "[a]dequate evidence to proceed to trial against Decator . . . was not available." (J.A. at 107.) Second, in a consolidated response to various motions by the defendants, the Government again stated that it sought the dismissal after "[i]t became apparent that there was insufficient evidence at that time to sustain the charges relative to those events against Decator and Scott." (J.A. at 136.)

The Government responds that the above statements are not to be construed as admissions that it improperly obtained an indictment knowing that it lacked a prosecutable case. The Government steadfastly maintains that it presented a legally sufficient case to the grand jury to acquire an indictment on all charges. Rather, the Government argues, the quoted statements described the prosecutor's own apprehension that the evidence accumulated at that time was insufficient to secure a conviction. According to the Government, it moved for dismissal without prejudice of the remaining five charges in a good faith and common-sense effort to structure more efficiently its prosecution of the entire conspiracy. As the Government explained to the district court, the various severance motions necessarily delayed and complicated prosecution on the remaining five counts, thereby raising scheduling concerns, and the Government was attempting to work within the district court's calendar. The Government also admitted that it was still engaged in "an ongoing investigation" into this complex bank robbery conspiracy. The Government asserts that it was this procedural conundrum, coupled with the prosecutor's personal dissatisfaction with the evidence accumulated against Decator at the time, that led it to move in good faith for dismissal of the charges without prejudice. Moreover, although Decator initially objected to the dismissal, he eventually consented, and he never objected to the sufficiency of the first indictment prior to reindictment. The Government contends, therefore, that Decator cannot now complain that the district court abused its discretion when it granted the motion.

We find that Decator has failed to present any credible evidence that the prosecutor moved for dismissal in bad faith. As to the alleged

7

admissions of insufficient evidence, the prosecutor explained to the satisfaction of the district court and this Court that the statements simply reflected his personal uneasiness about the evidence acquired and were not meant to suggest that the Government had insufficient evidence to support the first indictment. The Government's lack of bad faith is further demonstrated by the promptness of its dismissal motion, and by its timely and successful prosecution of Decator for the June 8 robbery and related firearms charge. Cf. Derr, 726 F.2d at 618-19 (dismissing reindictment when motion to dismiss initial indictment was made on the first day of the trial, no explanation was given, and defendant objected); Salinas, 693 F.2d at 352-53 (dismissing reindictment when motion to dismiss initial indictment was made after selection of jury and resolution of numerous pretrial motions). Considering the total lack of evidence suggesting prosecutorial misconduct and Decator's consent to the dismissal without prejudice, the district court did not abuse its discretion in granting the dismissal without prejudice.

Furthermore, we conclude that the second indictment was not untimely. In its motion to extend the time for reindictment, the Government argued that it needed additional time to corroborate the testimony of Jones, a co-conspirator who had just begun cooperating with law enforcement, and to collect additional evidence regarding two more suspects that had been identified with the conspiracy. Considering Jones's newly-acquired cooperation and the new evidence coming to light, we cannot say that the district court abused its discretion in granting the motion. We, therefore, affirm the district court's refusal to dismiss the second indictment.

B.

Decator also argues that the district court committed reversible error when it denied his motion to suppress statements he made and tangible evidence seized by police during a warrantless search of his automobile on June 8, 1994, the day of the second bank robbery. We do not address this issue, however, because both Decator and the Government stipulated that they would abide by the decision of a different panel of this Court, who heard arguments on this issue in connection with Decator's appeal of his November 1995 conviction. See United States v. Decator, No. 95-5207(L) (appeal pending).

8

C.

Decator also contends that because a factual question existed as to whether the bank robberies were all part of a single conspiracy or multiple conspiracies, the district court erred in denying his motion to charge the jury on multiple conspiracies. We review a district court's refusal to give a defendant's requested jury instruction for abuse of discretion. See United States v. Bostian, 59 F.3d 474, 480 (4th Cir.), cert. denied, 116 S. Ct. 929 (1996). "A multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved only in `separate conspiracies unrelated to the overall conspiracy charged in the indictment.'" United States v. Kennedy, 32 F.3d 876, 884 (4th Cir. 1994) (quoting United States v. Casteneda-Cantry, 20 F.3d 1325, 1333 (5th Cir. 1994)). Because Decator failed to present evidence to support a multiple conspiracy instruction, we find his argument to be without merit.

Decator was indicted, along with Scott and Bryant, on a single charge of conspiracy "to commit and attempt to commit bank rob-bery." The indictment alleged that the robbery of September 21, 1993, the attempted robbery of June 6, 1994, and the robbery of June 8, 1994, were all relevant acts done in furtherance of a single conspiracy to secure money for themselves and to obtain funds to finance the cre-ation of an entertainment company. Decator's request for an instruc-tion on multiple conspiracies was based on his interpretation of Jones's testimony that two separate conspiracies took place. Accord-ing to Decator, Jones's testimony supported Decator's theory that the initial conspiracy, undertaken solely to obtain funds to finance the entertainment company, culminated with the September 21 robbery. A second conspiracy was then initiated several months later for the entirely different purpose of acquiring funds to satisfy the individual co-conspirator's debts and to begin new and separate ventures. The district court denied Decator's request, concluding that there was sub-stantial evidence supporting the Government's theory of a single, ongoing conspiracy.

The Government presented evidence that (1) the same four defen-dants participated in all three robberies, (2) extensive planning and preparation took place prior to the robberies which were all executed in a similar and sophisticated manner, (3) the four defendants main-

9

tained their close affiliation throughout the intervening nine months between robberies, and (4) the primary motivation for all three bank robbery incidents was the promotion of I.C. Entertainment, Inc. Based on the foregoing, the district court did not abuse its discretion by refusing to instruct on multiple conspiracies. Cf. Kennedy, 32 F.3d at 884 (affirming district court's refusal to instruct on multiple conspiracies when there was "ample evidence that the[defendants] were related by virtue of their extensive and long-lasting . . . relationships").

D.

Decator also challenges his sentences for conspiracy, the September 21 bank robbery, and the June 6 attempted bank robbery, contending that the district court, after imposing a sentence of 67 months during the sentencing hearing, erroneously increased the sentence to 77 months in its written judgment. We conclude that the district court failed to impose any sentence on Decator during the sentencing hearing. Rather, the district court failed to sentence Decator until it issued its written judgment of conviction, outside Decator's presence, in violation of Rule 43 of the Federal Rules of Criminal Procedure. Rule 43 requires that a "defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." Fed. R. Crim. P. 43(a). Accordingly, we remand for resentencing.

As a result of his November 1994 convictions for the June 8 bank robbery and related firearms charge, Decator had already served 20 months for his conspiracy-related crimes when he appeared before the district court in February 1996 for sentencing on the five convictions arising out of his second indictment. During the hearing, at which Decator was present, the district court stated its intent not to penalize Decator for being tried and convicted in two separate trials rather than in a single trial. In other words, the district court explained that it intended to sentence Decator as if all his conspiracy-related sentences had been imposed at the same time. However, the district court also wanted to give Decator "full credit" for the 20 months served.

A lengthy discussion ensued regarding how the district court could accomplish these objectives. Counsel for Decator suggested that the

10

district court could simply reduce Decator's final sentences on the three convictions by 20 months to account for the time already served. This computation would produce a sentence of 67 months. We disagree with Decator that the district court agreed to this calculation. Instead, the court directed counsel for Decator and the Government to coordinate with the Bureau of Prisons to determine the proper wording for a written order that would impose a sentence on Decator equal to the time he would have served if he had been sentenced for all seven convictions simultaneously, taking into account the 20 months he had already served. After the sentencing hearing, counsel for Decator and the Government failed to agree on the proper wording to carry out the district court's intentions. After receiving written correspondence from counsel, the district court ultimately issued its written judgment in which it adopted, without explanation, the Government's proposed sentence of 77 months.

Although we disagree with Decator's assertion that the district court sentenced him to 67 months and then improperly increased this sentence, we also disagree with the Government's argument that the sentence should be affirmed because "[t]he ambiguity in the oral pronouncement of sentence was effectively and conclusively resolved in the written Judgment and Commitment." (Appellee's Br. at 38.) Unfortunately, the district court failed to reconvene the sentencing hearing to pronounce the sentence in Decator's presence, explain its reasoning, and allow opposing arguments from counsel. As a result, we conclude that the district court erroneously sentenced Decator outside of his presence in violation of Rule 43 of the Federal Rules of Criminal Procedure. Accordingly, we must remand for resentencing.**4**

E.

Decator contends that his conviction for criminal contempt should

_____

**4** Nothing we have said should be construed as a comment on the propriety of the ultimate sentence imposed on Decator. We simply note that under the circumstances of this case, the district court has the discretion to impose a sentence for the instant offense that runs "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment . . . to achieve a reasonable punishment." U.S. Sentencing Guidelines Manual § 5G1.3(c), p.s. & comment. (n.3) (1995).

11

be reversed because his conduct did not constitute criminal contempt. Decator also argues that even if his actions were contemptuous, the district court failed to certify that it "saw or heard the conduct" and that the conduct "was committed in the actual presence of the court," as required by Rule 42(a) of the Federal Rules of Criminal Procedure. We conclude that Decator's arguments are without merit and affirm Decator's contempt conviction.

As the jury delivered its guilty verdict, Decator became loud and abusive, proclaiming his innocence, accusing the prosecutors and witnesses of lying, and verbally assaulting the jurors. This type of contumacious behavior clearly warrants a conviction of criminal contempt. See In re Chaplain, 621 F.2d 1272, 1277 (4th Cir. 1980) (en banc) (acknowledging that "`threatening the judge or disrupting a hearing or obstructing court proceedings'" are examples of direct criminal contempt) (quoting Harris v. United States, 382 U.S. 162, 164 (1965))).

Also, the district court's order, in which it stated that it based its finding of criminal contempt on Decator's "statements and actions [made] during the taking of the jury verdicts in open Court," (J.A. at 484), fully satisfies the requirements of Rule 42(a). Moreover, in United States v. Neal, 101 F.3d 993 (4th Cir. 1996), this court held that a criminal contempt charge involving

> conduct occurring in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court . . . and where immediate punishment is essential to prevent demoralization of the court's authority before the public . . . may be punished summarily without notice and a hearing.

Id., at 997 (quotation and citations omitted) (first alteration in original); see also Fed. R. Crim. P. 42(a). Therefore, "[e]xcept for serious criminal contempts, the procedural safeguards required for criminal contempt proceedings do not apply when the conduct in question occurs in the actual presence of the court." Neal, 101 F.3d at 997 n.1 (citing International Union, UMWA v. Bagwell, 114 S. Ct. 2552, 2557 n.2 (1994)). We conclude that the district court did not abuse its discretion in convicting Decator of criminal contempt.

12

III.

In conclusion, we affirm all of Decator's convictions, including his conviction for criminal contempt. However, we vacate Decator's 77-month concurrent sentences for conspiracy, bank robbery, and attempted bank robbery, and remand for resentencing.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED IN PART

13