**UNITED STATES of America**

v.

**Patrick SAYES, et al.**

**No. CRIM. A. 98–117–A.**

United States District Court,
M.D. Louisiana.

May 19, 1999.

L.J. Hymel, United States Attorney., Middle District of Louisiana, Frederick Angelo Menner, Jr., Assistant U.S. Attorney, MDLA, Middle District of Louisiana, Baton Rouge, Mark Kappelhoff, U.S. Department of Justice, Civil Rights Division, Criminal Section, Washington, DC, for U.S.

Joseph R. Streva, Jr., Federal Public Defenders Office, Middle and Western Districts of Louisiana, Lafayette, LA, for Defendant, Patrick Sayes.

John S. McLindon, Rainer & Anding, Baton Rouge, LA, for Defendant, Harrison Daniels.

Kenneth R. Fabre, The Fields Law Firm, Baton Rouge, LA, for Defendant, John Swan.

### REVISED RULING ON MOTION FOR PARTIAL DISMISSAL OF INDICTMENT

JOHN V. PARKER, District Judge.

The ruling dated May 17, 1999 (doc. no. 92) is hereby revised so as to read as follows:

This matter is before the court on a motion by the government for leave to file a partial dismissal without prejudice of Counts 2 and 3 of the indictment as to defendant Patrick Sayes only. Defendant opposes the proposed dismissal without prejudice and the government has filed a reply. There is no need for oral argument.

Defendant Patrick Sayes is a former Correctional Lieutenant with the Louisiana State Penitentiary at Angola, Louisiana. Sayes has been indicted for two counts of violating 18 U.S.C. § 242, by depriving another person (inmate Rayfield Jackson) of his civil rights while defendant was acting under color of state law. In Count 2, Sayes is charged with willfully permitting other correctional officers under his supervision (defendants Daniels and Swan) to violate Jackson's civil rights by unlawfully assaulting and beating Jackson. In Count 3, Saves is charged with aiding and abetting Daniels and Swan in willfully preventing Jackson from receiving medical care and treatment following the alleged beating.

The government seeks to dismiss the indictment as to Sayes without prejudice. Rule 48(a) of the Federal Rules of Criminal Procedure provides that a government attorney "may by leave of court file a dismissal of an indictment ... and the prosecution shall thereupon terminate." The requirement for leave of court has

been construed as allowing the court to exercise its discretion in ruling on a prosecutorial motion to dismiss. *U.S. v. Reyes*, 102 F.3d 1361 (5th Cir.1996); *U.S. v. Welborn*, 849 F.2d 980 (5th Cir.1988). It has been repeatedly noted that the requirement for leave of court is intended to "prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy." *Reyes* at 1367. Consequently, the main consideration for the court is whether the government is acting in good faith, i.e. in the public interest rather than to harass the defendant.

█ When the defendant does not contest the matter, the court may presume that the government is acting in good faith. *Id.* However, when as in this case, defendant opposes the motion, the government is obligated to furnish "more than a conclusory reason" to obtain a dismissal without prejudice. *Id.* "Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than 'a mere conclusory interest.'" *U.S. v. Salinas*, 693 F.2d 348, 352 (5th Cir.1982) (citations omitted.)

█ Accordingly, the government contends that it is acting in the public interest in seeking to dismiss the indictment as to Patrick Sayes. As more fully outlined in the government's reply brief, the parties have presented evidence and submitted briefs in connection with motions by defendant Sayes to either dismiss the indictment or to suppress evidence at trial. The defense motions are essentially rooted upon defendant's contention that he made statements under promise of immunity made to him by Warden Cain during an internal investigation conducted by the prison authorities at Angola. Defendant contends that the government must affirmatively show that his subsequent indictment was, and that the trial will be, based upon evidence derived wholly independent of his compelled statements.

A *Kastigar*[1] hearing was conducted on the motion to suppress which was re-opened in April in connection with the subsequently filed motion by defendant to dismiss the indictment.

The evidence presented on the defense motions established that an internal investigation was conducted by the prison authorities and Sayes Initially denied any knowledge or involvement in the matter. However, on December 24, 1997, Sayes made oral and written statements implicating himself in the conduct charged in the indictment. These statements were given only after Sayes was assured by Warden Cain that if he told them what had happened he would receive a demotion rather than being fired and that no criminal charges would be brought against him. Prior to giving his written statement, defendant was read, and asked to sign, an "Internal Investigation Warning". That document specifically provided that "neither your statements nor any information or evidence which is gained by reason of such statements can be used against you **in any subsequent criminal proceeding.**" Defendant's Exh. 3 (Emphasis added).

According to defendant, the evidence showed that he was granted informal use immunity by the State. Hence, defendant argued that the burden had shifted to the government to affirmatively show that the indictment was, and that the trial would

---

1. *Kastigar v. U.S.*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). As noted in *Kastigar*, the Fifth Amendment privilege against self-incrimination generally allows a citizen to remain silent when asked questions requiring an incriminatory answer. The government may, however, compel testimony from an unwilling witness by conferring on the witness immunity from use of the compelled testimony in subsequent criminal proceedings. *Id.* When the defendant provides testimony under such a grant of immunity, the government has the affirmative duty of proving at a *"Kastigar* hearing" that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

be, based upon evidence derived wholly independent of his compelled statements. In response, the government argued that Sayes was not granted immunity because Warden Cain did not have the power to grant him immunity and the evidence merely established that the warden agreed not to call the local district attorney—that immunity was neither promised nor discussed.

The defense motions were primarily directed toward the statement that Sayes made on December 24, 1997. However, as the proceedings developed, it became apparent that Sayes made an additional statement on January 13, 1998, after Major Eric Sivula took over the investigation, which was clearly presented to the grand jury. While the government correctly notes that defendant was read his "Miranda rights" by Major Sivula prior to giving the January 13th statement, serious questions were raised by the defense as to whether Sayes should have reasonably understood that his prior deal made with the Warden was no longer in place.

In view of the testimony received over the course of the proceedings and the arguments of defense counsel, the government "now recognizes that presenting defendant's [January 13, 1998] statement to the grand jury may have created some legal issues" pertaining to the validity of the indictment "not only at the trial court level, but also through the appellate courts." The government further explains that it seeks "to promote judicial and prosecutorial efficiency" by having the "potentially flawed indictment" dismissed and by having defendant re-indicted "free of any taint" thereby "eliminating any potential legal or constitutional prejudice against the defendant".

Defendant argues that the government has not acted in good faith. According to defendant, it has long been apparent that the grand jury proceedings were tainted and the government brings its motion to dismiss at the last moment in an attempt to escape an adverse ruling by the court on defendant's motion to dismiss. Defendant additionally argues that any further proceedings would be futile because "witnesses essential to the government's case were exposed to the immunized statements of the defendant" and the "taint which has resulted from that exposure cannot be undone".

While the government has been somewhat slow to react, the court accepts the representations made by the prosecuting attorneys that they actually seek to expedite matters in the long run and to avoid unnecessary legal entanglements that could be avoided by re-indicting defendant. The court has no "affirmative reason to believe" that the government's motion to dismiss without prejudice is "motivated by considerations contrary to the public interest." *U.S. v. Salinas*, 693 F.2d 348, 352 (5th Cir.1982) (quoting *U.S. v. Hamm*, 659 F.2d 624, 631 (5th Cir.1981)).

As defendant is quick to point out, there have been serious issues raised as to whether the January 13, 1998 statement which was considered by the grand jury was effectively made under a promise of immunity.[2] Even if these issues were resolved in defendant's favor, the court could

---

**2.** Under the facts of this case, it is immaterial (1) whether or not the warden actually had the power to grant defendant immunity; and (2) whether the promises made by the warden are properly characterized as an informal grant of immunity. To be voluntary, the government must establish that "under the 'totality of the circumstances' the statements are the product of the accused's 'free and rational' choice." *U.S. v. Martinez–Perez*, 625 F.2d 541 (5th Cir.1980). The statement provided by Sayes in December of 1997 was clearly made under threat of immediate arrest and termination coupled with the assurances that if he gave the statement he would only be demoted and that his statement would not be used in any subsequent criminal proceeding. In the words of Major Shirley Cooty, the union president representing Sayes: "He had been told there was a deputy en route to Angola to make arrests. I mean it was Christmas Eve. He had been threatened with arrest, he was scared, he was upset." Tr. p. 27. At that point, Warden Cain informed Sayes that he has just gotten off the phone with the Secretary for the Department of Cor-

not have dismissed the indictment without having first performed a harmless error analysis. See, *U.S. v. Schmidgall,* 25 F.3d 1533 (11th Cir.1994), cert. denied, 513 U.S. 1128, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995).

At the *Kastigar* hearing, the government presented evidence from which it might be found that its investigation was conducted independently of that conducted by the prison authorities. Theoretically, the court could suppress the statements and the government could proceed to try Sayes with evidence wholly independent of his compelled statements. But, the January 13th statement was presented to the grand jury thereby creating a thorny issue as to whether that presentation was harmless error. The effect of such clenching evidence upon the grand jury would be difficult to surmise. It is apparently in recognition of this factor and the legal questions emanating therefrom that the government moves to dismiss the indictment as to Sayes.

Significantly, even if the court were to grant defendant's motion to dismiss the indictment on this basis, the government would not have been barred from re-indicting defendant using evidence obtained wholly independently of defendant's statements.[3] Citing *Kastigar,* supra, 406 U.S. at 457, 92 S.Ct. 1653 the government persuasively argues that defendant would only be entitled to placed "in substantially the same position" that he would have been in but for the use of the immunized statement. The government contends that a new indictment free of such tainted evidence would be sufficient to accomplish that purpose. The court agrees. Defendant cannot claim to be prejudiced by the government's actions in dismissing the indictment without prejudice under the circumstances presented here.

Finally, the court is cognizant of defendant's argument that it would be futile to dismiss without prejudice because the government cannot obtain another indictment absent tainted evidence. The court is not persuaded, however, that it would be futile for the government to proceed with its re-indictment strategy. Neither the defendant nor this court is privy to all of the information available to the government or to the sources of such information and neither of us can predict at this time whether a "taint free" indictment can be obtained.

Defendant's arguments relating to the government's bad faith are simply misplaced.

Accordingly, the motion by the government (doc. no. 89) to dismiss the indictment without prejudice as to Count 2 and Count 3 as to defendant Patrick Sayes only is hereby GRANTED.

---

rections and that they were prepared to offer Sayes a deal, i.e. if he talked, he would not be arrested, he would only be demoted and that would be the extent of it. Tr. 24. If this did not constitute an informal grant of immunity, it certainly raised serious issues as to the voluntariness of the December 24, 1997 statement. As previously noted, that in turn raised serious issues as to whether the subsequent statement made on January 13, 1998 was likewise tainted. The court points out that no ruling is made here on the voluntariness/admissibility of either of the statements made by defendant. The court, for purposes of ruling on the motion to dismiss the indictment without prejudice, assumes that evidence would establish the inadmissibility of those statements. The court also assumes for the same purposes that the government here is held to the *Kastigar* standard as to the federal investigation.

**3.** See, *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). In that case, the defendant argued that the prosecution had obtained evidence in violation of the his privilege against self-incrimination. The Supreme Court observes: "It does not seem to be contended that tainted evidence was presented to the grand jury; but in any event our precedents indicate this would not be a basis for abating the prosecution pending a new indictment, let alone barring it altogether." 384 U.S. at 255 n. 3, 86 S.Ct. at 1419 n. 3.