**UNITED STATES of America**

v.

**Charles Addison COCKRELL**

**No. 4:03–CR–337A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 12, 2005.

David L. Jarvis, United States Attorneys Office, Fort Worth, TX, for plaintiff.

Jeanette Mercado, Federal Public Defender, Forth Worth, TX, for defendant.

*MEMORANDUM OPINION
and ORDER*

(Amended)

MCBRYDE, District Judge.

(This amends, and replaces in its entirety, the memorandum opinion and or-

der in this action signed January 11, 2004.)

Came on for consideration the motion of United States of America to dismiss the indictment against defendant, CHARLES ADDISON COCKRELL. Having considered the motion, the record, tentative sentencing information, and applicable authorities, the court finds that the motion should be denied.

## I.

### Procedural Background

On December 17, 2003, a federal grand jury indicted defendant for the offense of knowingly and unlawfully possessing on September 17, 2003, a firearm from which the manufacturer's serial number had been removed, obliterated, and altered, in violation of 18 U.S.C. § 922(k) and 924(a)(1)(B). On December 18, 2003, the clerk of court issued a warrant for defendant's arrest, but, apparently, the warrant was never executed. On December 29, 2003, David Jarvis, the assistant United States attorney assigned to the prosecution of this case, ("AUSA Jarvis") filed an application for writ of habeas corpus, asking for the issuance of a writ of habeas corpus *ad prosequendam* directing the United States Marshal to produce defendant before the magistrate judge on January 9, 2004, for initial appearance. The application recited that defendant was being detained by "the United States Marshal for the Northern District of Texas, Tarrant County Jail, Texas." On December 29, 2003, the United States Magistrate Judge issued the requested writ of habeas corpus directing the United States Marshal to bring defendant to court on January 9 for initial appearance. That appearance did not take place.

By order signed June 18, 2004, the court noted that there had been no action in this case since the date the writ was issued. Therefore, the court ordered that by July 9, 2004, the government file a report (1) informing the court of the status of the case, (2) giving full information explaining why no action had been taken in the case since December 29, 2003, (3) giving the court all information the government had concerning the whereabouts of the defendant at all times since December 29, 2003, (4) describing, by date and type activity, all things the government had done since December 29, 2003, to cause the defendant to be brought before the court for disposition of the case, and (5) providing the court the government's recommendation relative to future handling and disposition of the case.

On July 8, 2004, the government filed its report, stating that, although an arrest warrant had been issued, "the defendant has yet to be located for service of the warrant." Gov't's July 8, 2004, Rep. at 1. The report concluded:

Based upon the nature of the offense allegedly committed by defendant, Charles Addison Cockrell, his criminal history, and the efforts made and being made by ATF to locate and apprehend the defendant, it is respectfully recommended that the indictment in the above-styled and captioned case remain pending, and that the arrest warrant issued pursuant remain active pending the location and arrest of the defendant.

*Id.* at 2.

On October 5, 2004, the government filed another motion for writ of habeas corpus *ad prosequendam*, noting that defendant was in custody of the Hutchins Unit, Dallas, Texas. The writ was issued on October 6, 2004. Defendant made his initial appearance On November 5, 2004, before the United States Magistrate Judge, who appointed the Federal Public Defender to represent him. The magistrate judge ordered that defendant be detained pending trial. On November 12

defendant appeared before the undersigned for arraignment, and his trial was set to begin January 10, 2005. The court signed a scheduling order on November 12, which fixed deadlines for motions, defined pretrial procedures, and fixed a deadline for a plea of guilty pursuant to a plea agreement. On December 21, 2004, the court signed an order establishing a schedule to be followed by counsel for attempting to reach agreement on a proposed court's charge to the jury.

On December 23, 2004, the government filed its motion to dismiss the indictment. The motion, signed by AUSA Jarvis and Paul Gartner, deputy criminal chief, ("AUSA Gartner"), states, in pertinent part:

> On December 17, 2003, an indictment was returned by a federal grand jury in Fort Worth, Texas in case number 4:03–CR–337–A charging the defendant with unlawful possession of a weapon from which the manufacturer's serial number had been removed, obliterated, or altered. The weapon which was the subject of this federal indictment was a Bryco arms model 38, .380 caliber pistol.
>
> On December 19, 2003, an indictment was returned by a state grand jury in Tarrant County, Texas in case number 906214A charging defendant Charles Addison Cockrell V with the felony offense of Possession of a Controlled Substance of Less than One Gram, namely: Methamphetamine. The individual named in this state indictment was the same individual named in the above-referenced federal indictment. This same State of Texas indictment also included an "enhancement paragraph" charging the defendant with using or exhibiting a deadly weapon during the commission of the above-referenced drug offense. The deadly weapon which was the basis of this weapon enhancement paragraph in the state indictment was the same weapon named in the above-referenced federal indictment.
>
> On July 4, 2004, the defendant pleaded guilty in the 213th District Court of Tarrant County, Texas to the above-referenced drug possession state charge. As a term of the plea bargain in this state prosecution, the State of Texas agreed to waive any enhanced sentence in connection with a deadly weapon finding.
>
> The deadly weapon enhancement was previously included in the above-referenced state indictment and clearly considered as part of the plea negotiation process by Tarrant County prosecutors. Under these circumstances, there is no compelling federal interest to warrant additional federal prosecution of criminal behavior that was the subject of a previous state prosecution. Accordingly, the government requests dismissal of the pending federal indictment. Dismissal of this indictment would be in the interest of justice.

Gov't's Mot. to Dismiss at 1–2. The certificate of conference reflects that, although AUSA Jarvis had not discussed the motion with counsel for defendant, based on prior conversations with her, AUSA Jarvis believed that the motion would be unopposed. Notwithstanding a directive in the court's November 12, 2004, order that defendant file a response to any pretrial motion filed by the government within seven days after receipt of such motion, Nov. 12, 2004, order at 2, ¶ 5, no response was filed,[1] though defendant did file a memorandum on January 6, 2005, in support of the motion.

---

1. The certificate of service reflects that the motion was served on defendant's counsel on December 23, 2004, by hand delivery.

Because of the looming January 10, 2005, trial date, on December 30, 2004, the court attempted to locate AUSA Jarvis to arrange for a telephone conference to discuss the motion. Neither he nor AUSA Gartner could be located. Accordingly, Richard Roper, the United States Attorney for the Northern District of Texas, ("USA Roper") was pressed into service to arrange for the telephone conference and to participate on behalf of the government. During the telephone conference, the court discussed with counsel concerns regarding the propriety of the motion. USA Roper expressed the thought that the requested dismissal could be justified by what has come to be known as the *Petite* policy. He stated that there was no other government policy that could be relied on to justify the requested dismissal. Dec. 30, 2004, Tr. at 8. The court directed USA Roper to file copies of all pertinent state court papers, the text of the *Petite* policy, and any correspondence between AUSA Jarvis and defendant's attorney. That filing was made on December 30. The court further directed the government to file by January 3, 2005, an explanation of why the *Petite* policy was believed to apply and to attach to that filing copies of any e-mails between government attorneys regarding the decision to file the motion. That filing was made on January 3.

The government provided with its December 30 filing copies of (a) U.S.A.M. § 9–2.031, Dual and Successive Prosecution Policy ("*Petite* policy"), (b) a letter dated December 23, 2004, from counsel for defendant to AUSA Jarvis urging him to reconsider prosecution of this case in the light of the *Petite* policy, and (c) a letter dated November 9, 2004, from defendant's counsel to AUSA Jarvis and its enclosures (copies of a December 19, 2003, indictment filed against defendant in state court, a document dated July 12, 2004, bearing the title "Written Plea Admonishments," and the state court judgment of conviction dated July 12, 2004). The only documentation provided with the government's January 3, 2005, filing were a January 3 message from AUSA Jarvis to Edgar Brown re the "Petite Policy Question" and Edgar Brown's January 3 response to the message.

By order signed January 5, 2005, the court ordered the government to provide additional information. One of the things requested by the order was full information pertaining to any communication between the government and any state or local authority pertaining to any prosecutorial or criminal activity of defendant or the *Petite* policy as it relates to defendant. The government's response on that subject was as follows:

[AUSA Jarvis] is only aware of the following communication: On December 2, 2003, Special Agent Zimmer interviewed defendant Cockrell in the Tarrant County jail. Shortly after that interview, Special Agent Zimmer informed officers P.R. Genualdo and E. Tamayo of the Fort Worth Police Department that federal authorities would prosecute defendant Cockrell for possession of a firearm with an obliterated serial number. The intent of this communication was that the state authorities would not prosecute Cockrell on any state firearms violations related to the September 17, 2003, traffic stop. Based upon his comments, Special Agent Zimmer believed that these Fort Worth police officers understood his request that state authorities defer to federal prosecution on any weapons related charges.

Beyond the above communication from Special Agent Zimmer, [AUSA Jarvis] is not aware of any other communications of any kind between any agent or attorney for the federal government and any agent or attorney for the State of Texas (or any county or local

authority) pertaining to the application of the petite policy.

Gov't's Jan. 6, 2005, Resp. at 10–11.

On January 6, 2005, defendant filed a document titled "Request to File Motion Outside Motion Schedule Deadline and Motion to Dismiss the Indictment Pursuant to the Speedy Trial Clause of the Sixth Amendment of the United States Constitution, for Impermissible Post–Indictment Prosecutorial Delay." The court allowed the out-of-time filing of the motion to dismiss. By almost simultaneous filings made the afternoon of January 7, 2005, the government filed a response to defendant's motion, urging that it be denied because of defendant's inability to meet the four-prong test to be applied in evaluating a claim of speedy trial violation, and defendant filed a motion to withdraw his motion to dismiss stating that he had concluded that he could not meet the four-prong test. The court ordered defendant's motion withdrawn.

The court held a hearing on the government's motion to dismiss on January 10, 2005, in advance of trial. The court collected additional information from the questioning of the ATF agent who is acting as case agent in this case, J.P. Zimmer, ("Agent Zimmer"), AUSA Jarvis, and defense counsel, and caused exhibits to be included in the record. In summary form, the record of that hearing reflects that:

Two, and possibly three, firearms were in the vehicle at the time defendant was arrested on September 17, 2003. Gov't Ex. 7. Defendant admitted that all of the firearms in the vehicle belonged to him and that he had placed them there. *Id.* At least two of them were loaded. Gov't Ex. 1. On December 2, 2003, Agent Zimmer spoke with local law enforcement officers and specifically informed them that the federal government would prosecute defendant for the federal offense of possession of a firearm with an obliterated serial number. Tr. of Jan. 10, 2005, hearing at 12–13. Agent Zimmer understood that state authorities would not pursue any charges as to the weapon with the obliterated serial number. *Id.* Before filing the motion to dismiss, AUSA Jarvis contacted the state prosecutor to inquire whether the same weapon had been the subject of the federal and state court indictments. *Id.* at 29–30. The prosecutor could not recall if that was the case.[2] *Id.* at 30. There is no apparent reason why a firearm not the subject of the federal indictment could not have served as the "deadly weapon" referenced in the enhancement paragraph. *Id.* at 27–28. Nevertheless, the government assumes that the same weapon was the subject of each indictment.[3] And, as a

---

**2.** AUSA Jarvis described his telephone conference with the state prosecutor as follows:

MR. JARVIS: I asked her if she had any independent recollection of the plea bargain arrangements as to what were the circumstances, why they waived the deadly weapon, were there any notes in her file to indicate promises made to the defendant about what would happen to the weapon or whatever. And she said she had nothing, she had no independent recollection of the case. She had no notes in the file. The only thing she had was what was in the public record, which indicated that the deadly weapon was waived as part of the plea bargain.

THE COURT: So she couldn't tell you which of the weapons was involved?

MR. JARVIS: No, Your Honor.
Tr. of Jan. 10, 2005, Hearing at 29–30.
Curiously, AUSA Jarvis did not disclose this communication, as he should have, when he responded to the January 5, 2005, order. *Supra* at 765–66.

**3.** No logical explanation was given at the hearing for the government's assumption that the same weapon was the subject of each indictment. AUSA Jarvis offered as an explanation that the .380 Bryco was the only weapon defendant made reference to when he made a written statement in September 2003. Tr. of Jan. 10, 2005, hearing at 30. This explanation fails to take into account that AUSA Jarvis had in his possession from the outset of his handling of the case proof that

backup position, the government now takes the position that the *Petite* policy applies, not because the same firearm was involved, but because the federal and state offenses arose from the same traffic stop that ultimately led to discovery of drugs and firearms in the vehicle occupied by defendant. *Id.* at 36–37.

At the conclusion of the hearing, the court announced that the motion was being denied and that the court would issue this memorandum opinion and order setting forth the reasons for the denial. The case proceeded to trial. Shortly thereafter four exhibits (Court Exs. 2, 3, 4, and 5) were added as part of the motion hearing record to document some of the state court criminal information that had been provided verbally at the hearing.

## II.

### Discretion Extended the Court by Rule 48(a) and its Exercise in this Case

Until 1946 federal prosecutors had the common-law right to terminate prosecution by entry of a *nolle prosequi* without leave of court. *United States v. Shanahan*, 168 F.Supp. 225, 227 (S.D.Ind.1958). *See also United States v. Salinas*, 693 F.2d 348, 350–51 (5th Cir.1982). That absolute right was eliminated on March 21, 1946, when the Federal Rules of Criminal Procedure took effect, following their submission by the Supreme Court to Congress and adoption by Congress. *Shanahan*, 168 F.Supp. at 227–28. *See also United States v. Co-*

*wan*, 524 F.2d 504, 510–11 (5th Cir.1975). The new Rule 48(a) provided, in pertinent part, that "[t]he Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate." *Shanahan*, 168 F.Supp. at 227. As the Fifth Circuit has noted, "[i]t seems manifest that the Supreme Court intended to make a significant change in the common law rule by vesting in the courts the power and the duty to exercise a discretion for the protection of the public interest." *Cowan*, 524 F.2d at 511. Apropos here is language used in *United States v. N. V. Nederlandsche Combinatie Voor Chemische Industrie:*

> The "leave of court" requirement in Rule 48(a) was clearly intended to change the then existing law that the prosecutor could dismiss a case solely in his discretion without any action by the court. The effect of Rule 48(a) necessarily turns what was once solely the prerogative of the executive into a shared responsibility between the executive and judicial branches of government. Where the court is convinced that the executive has failed in its responsibility in seeking to dismiss a criminal prosecution, it is the duty of the court to seek to remedy that failure.

75 F.R.D. 473, 475 (S.D.N.Y.1977) (footnote omitted).

With modifications not relevant here, Rule 48(a) remains in effect, requiring the

---

when the vehicle was searched at the time of defendant's arrest in 2003 two weapons were found in the vehicle. Court Ex. 1, 32nd page. The other explanation given by AUSA Jarvis was that "in December he made reference to the derringer, which I think he said that he made a gift of the derringer to the driver of the vehicle, Robert Rivera, and he did not 'possess' the weapon at the time of the traffic stop." Tr. of Jan. 10, 2005, hearing at 30. The fact is that Jarvis had from the outset

defendant's December 2, 2003, statement saying that "the derringer was given to me as a gift to give to my girlfriend." Gov't Ex. 7. Defendant said that same thing three times in his statement, and also said that "all three pistols belonged to me and were placed into the vehicle a blue Cadillac by me." *Id.* Thus, the December 2, 2003, statement made clear that defendant had constructive possession, at least, of all the weapons.

government to obtain leave of court for dismissal of an indictment. The government's motion to dismiss was made pursuant to Rule 48(a).

■ The Fifth Circuit has imposed severe constraints on the exercise by the district courts of the discretion given them by Rule 48(a), explaining that the "Executive remains ... the first and presumptively the best judge of whether a pending prosecution should be terminated." *Cowan*, 524 F.2d at 513. In *Cowan*, the Fifth Circuit went on to explain that "[t]he exercise of [the Executive's] discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless *clearly contrary to manifest public interest.*" *Id.* (emphasis added).[4] The Fifth Circuit determined that the principles it announced provided a synchronization of the essential function of each branch "to achieve a balance that serves both practical and constitutional values." *Id.*

■ In *United States v. Hamm*, the Fifth Circuit provided clarification, holding that

the "leave of court" requirement of Rule 48(a) is primarily intended to protect the defendant against prosecutorial harassment. The district court may not deny a government motion to dismiss a prosecution, consented to by the defendant, *except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest.*

659 F.2d 624, 628 (5th Cir.1981) (footnotes omitted) (emphasis added). The Fifth Circuit made clear that the discretion given a district court by Rule 48(a) authorizes the court to deny a motion to dismiss, even if the defendant has consented to the motion, *"when the prosecutor's actions clearly indicate a betrayal of the public interest."* *Id.* at 629 (internal quotation marks omitted) (emphasis added). Or, as the Fifth Circuit put it another way, "[u]nless the court finds that the prosecutor is clearly motivated by considerations other than his assessment of the public interest, it must grant the motion to dismiss." *Id.* at 630. Other courts have been in accord. For example, in *United States v. N.V. Nederlandsche Combinatie*, a federal court in New York said that in deciding whether to approve a government motion to dismiss an indictment:

A court, in the exercise of its discretion, certainly must protect the defendant from harassing motions. In addition to protecting the rights of the defendant, the court is vested with the responsibility of protecting the interests of the public on whose behalf the criminal action is brought. This is especially true where, as here, the matter comes before the court on indictment rather than information.

428 F.Supp. 114, 116 (S.D.N.Y.1977) (citation omitted).

■ In *United States v. Salinas*, the Fifth Circuit added to the rules it announced in *Cowan* and *Hamm* that, "[a]l-

4. In *Rinaldi v. United States*, the Supreme Court noted that it was not deciding the extent of the discretion given district courts to deny a motion to dismiss filed by the government for the benefit of the defendant, saying: But [Rule 48(a)] has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the pub-

lic interest. See *United States v. Cowan*, 524 F.2d 504 (C.A.5 1975); *United States v. Ammidown*, 162 U.S.App. D.C. 28, 33, 497 F.2d 615, 620 (1973). It is unnecessary to decide whether the court has discretion under these circumstances, since, even assuming it does, the result in this case remains the same. 434 U.S. 22, 29–30 n. 15, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977).

though the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than a mere conclusory interest." 693 F.2d at 352 (internal quotation marks and footnotes omitted). The court went on to explain that "[t]he presumption that the prosecutor is the best judge of the public interest is rebutted when the motion to dismiss contravenes the public interest because it is not made in good faith," *id.,* and that "[i]n such a case, Rule 48(a) mandates that the court deny the Government's motion to dismiss the indictment: under the discretion yielded to [the court] by 48(a) to check [an] abuse of Executive prerogative, the court can and must deny the motion to dismiss." *Id.* (internal quotation marks omitted).

■■ *N. V. Nederlandsche Combinatie* is not alone in emphasizing that the fact that the prosecution is based on an indictment returned by the grand jury, rather than on an information filed by the United States Attorney, is a factor to be considered in evaluating whether the motion to dismiss should be granted. 428 F.Supp. at 116. In *United States v. Abreu,* the court, after having quoted extensively from the Fifth Circuit's *Cowan* opinion, noted that "[c]learly, the fact that an indictment was returned by a grand jury removes the decision as to whether the prosecution of those charges shall terminate from the sole and exclusive province of the executive, whether incident to a plea agreement or otherwise." 747 F.Supp. 493, 502 (N.D.Ind.1990). *See also United States v. Doe,* 101 F.Supp. 609, 611 (D.Conn.1951). Quite reasonably, once the grand jury system has been used by the government to engage in the serious business of indicting a person for a federal criminal offense, and the processes of the court have been invoked by the government in the prosecution of the offense the grand jury thought

probably was committed and was important enough to be prosecuted, the government should not be permitted to, and cannot, frivolously abandon the prosecution. If the government is going to walk away from the prosecution, it must at least "supply sufficient reasons" for doing so. *Salinas,* 693 F.2d at 352. In *Salinas,* the Fifth Circuit quoted with approval from the opinion of the District of Columbia Circuit in *United States v. Ammidown,* 497 F.2d 615 (D.C.Cir.1973), as follows:

> [Rule 48(a)] contemplates exposure of the reasons for dismissal "in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors," and in pursuance of this purpose "to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial."

*Salinas,* 693 F.2d at 352 n. 17.

■ For reasons that are explained below, the court has concluded that a proper exercise of the court's Rule 48(a) discretion would be to deny the government's motion to dismiss the indictment that was returned by the grand jury on December 17, 2003. The government has not advanced substantial reasons for the proposed dismissal; and, the court is convinced that the government's request for dismissal is a failure of the government's responsibility and clearly indicates a betrayal of public interest.

### III.

*The Petite Policy, When Reasonably Applied, Does Not Support the Motion to Dismiss*

A. *The Basis of the Government's Motion.*

The text of the motion is set forth earlier in this memorandum opinion and order. Basically, the government requests dis-

missal of the indictment because the dismissal "would be in the interest of justice." Gov't's Mot. to Dismiss at 2. No mention is made of the *Petite* policy. However, the motion does mention that, after the indictment in this case was returned charging defendant with unlawful possession of a weapon from which the serial number had been removed, a state court grand jury returned an indictment against defendant for a drug offense, which included an enhancement paragraph charging defendant with using or exhibiting a deadly weapon during the drug offense, which, the motion alleged, was the same weapon on which the federal indictment was based.[5] The motion goes on to explain that about seven months after the federal indictment was filed, defendant pleaded guilty to the state court drug offense, and that as a term of his state plea bargain, the State of Texas agreed to waive enhancement based on the deadly weapon. The government reasons from those allegations that "there is no compelling federal interest to warrant additional prosecution of criminal behavior that was the subject of a previous state prosecution." *Id.*

Not until the court had the telephone conference with defendant's counsel and USA Roper on December 30, 2004, did the court learn that there might be a contention that the *Petite* policy might be involved. USA Roper explained:

[MR. ROPER:] The question in this case boils down to whether our continuing prosecution would violate the Petite Policy, which is codified in the U.S. Attorney's manual in 9–2.031. And essentially that it directs the U.S. Attorney not to continue prosecution on an offense that's already been prosecuted in the state.

THE COURT: For offenses that have been prosecuted in the state?

MR. ROPER: Yeah. For the same offense.

Dec. 30, 2004, Tr. at 3–4. USA Roper recognized that a federal interest was being served by the grand jury's return of the indictment in this case, and his review of the file caused him to conclude that there was a joint investigation involving the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and local police authorities, and that "there was always contemplation that the case was going to be prosecuted federally." *Id.* at 9–10. USA Roper also recognized that the proposed state court enhancement based on a deadly weapon was entirely different from the federal offense, and that "the whole question is ... whether the Petite Policy actually does apply." *Id.* at 8.

When the court received the December 30, 2004, filing made by USA Roper, the court saw how the *Petite* policy was injected into the case. A part of that filing was a December 23 letter from counsel for defendant to AUSA Jarvis, advancing the argument that the *Petite* policy applied because the same firearm that is referenced in the federal indictment was the basis of the state court enhancement, which was waived by the State of Texas as part of defendant's state court plea agreement. Gov't's Dec. 30, 2004, Submission, Attach. 2. As previously noted, immediately following preparation by defense counsel of the December 23 letter, AUSA Jarvis filed the motion to dismiss.

After the court received the December 30 filings, the government openly maintained that the motion is justified by the *Petite* policy. *See* gov't's mem. in resp. to verbal court order of Dec. 30, 2004 (filed Jan. 3, 2005); gov't's resp. to court order of Jan. 5, 2005 (filed Jan. 6, 2005). Each document urges that a crucial factor causing the *Petite* policy to be invoked is that the weapon that was used as the basis for

---

**5.** As mentioned, *supra,* there was no factual basis for that allegation.

the state court deadly weapon enhancement is the same weapon used as a basis for the federal indictment. Jan. 3, 2005, mem. at 2, 10; Jan. 6, 2005, resp. at 4.

B. *The Scope of the Petite Policy, When Reasonably Read.*

As noted above, USA Roper provided the text of the *Petite* policy with his December 30, 2004, filing. The purpose of the policy is set out in the second paragraph of its section 1 Statement of Policy, as follows:

> The purpose of this policy is to vindicate substantial federal interests through appropriate federal prosecutions, to protect persons charged with criminal conduct from the burdens associated with multiple prosecutions and punishments for substantially the same act(s) or transaction(s), to promote efficient utilization of Department resources, and to promote coordination and cooperation between federal and state prosecutors.

Gov't's Dec. 30, 2004, Submission, Attach. 2 at first page. In *Rinaldi,* the Supreme Court succinctly described the policy, saying "[t]he *Petite* policy was designed to limit the exercise of the power to bring successive prosecutions for the same offense to situations comporting with the rationale for the existence of that power." 434 U.S. at 28–29, 98 S.Ct. 81.

C. *Defendant's State Court Proceedings, and Related State Court Criminal Matters.*

The indictment returned by the state court jury on December 19, 2003, two days after the federal indictment was returned, charges that on September 17, 2003, in Tarrant County, Texas, defendant "intentionally or knowingly possess[ed] a controlled substance," and contains what defendant and the government have referred to as an "enhancement paragraph," worded as follows:

> STATE JAIL ENHANCEMENT–3RD DEGREE FELONY NOTICE: AND IT IS FURTHER PRESENTED TO SAID COURT THAT A DEADLY WEAPON, TO–WIT: A FIREARM, WAS USED OR EXHIBITED DURING THE COMMISSION OF THE STATE JAIL FELONY OR STATE JAIL FELONIES SET OUT ABOVE OR DURING THE IMMEDIATE FLIGHT FOLLOWING THE COMMISSION OF THE STATE JAIL FELONY OR STATE JAIL FELONIES AND THAT THE DEFENDANT USED OR EXHIBITED THE DEADLY WEAPON OR WAS A PARTY TO THE OFFENSE AND KNEW THAT A DEADLY WEAPON WOULD BE USED OR EXHIBITED.

Gov't's Dec. 30, 2004, Submission, Attach. 3, 2d page.

Under Texas law, the effect of the enhancement, if established, would be to convert a state jail felony, punishable by confinement for a term of not more than two years or less than 180 days, to a third-degree felony, carrying potential punishment of not more than ten years or less than two years. Tex. Penal Code Ann. §§ 12.34 & 12.35 (Vernon 2003).

At the time of the disposition of defendant's December 19, 2003, state court indictment, defendant already was subject to state court prosecution based on a June 2003 drug offense, August 23, 2003, offenses of unauthorized use of a motor vehicle and theft, an October 22, 2003, drug offense, and March 2004 offenses that included drug offenses, theft, unlawfully carrying a weapon, and forgery.

On July 12, 2004, defendant signed a document in the state case resulting from the December 19, 2003, indictment (Case No. 0906214A) titled "WRITTEN PLEA ADMONISHMENTS." Gov't's Dec. 30, 2004, Submission, Attach. 3, 5th page. It

shows that the plea recommendation is "1 year State Jail (waive deadly weapon)." *Id.* On that same date, July 12, a judgment was signed in No. 0906214A showing that defendant was convicted of the drug offense, that the deadly weapon enhancement was waived, that the terms of the plea bargain were "1 YEAR STATE JAIL (WAIVE DEADLY WEAPON)," and that defendant's state court punishment was one year in the state jail, to commence July 12, 2004, with credit for 162 days for time already served, the sentence to run concurrently with other sentences rendered in Tarrant County.[6] *Id.*, 3rd page.

The sentence defendant received in Case No. 0906214A on July 12, 2004, served as pleas in bar, preventing him from being further prosecuted for a June 2003 drug offense and an April 2003 theft offense. Court's Exs. 4 & 5. Also, on July 12, 2004, the state court sentenced defendant to one year for the October 2003 drug offense and ten months for the March 2004 forgery offense. Court's Exs. 2 & 3. Both of those sentences were to run concurrently with the one-year sentence imposed in Case No. 0906214A. *Id.*

Summed up, on July 12, 2004, the state cleared its criminal docket against defendant by multiple sentences to run concurrently and pleas in bar of other offenses, but not a single state court sentence imposed any punishment whatsoever for a firearm offense, much less the offense of possessing a firearm from which the serial number had been removed, obliterated, or altered.

D. *The Federal Offense, and the Potential Punishment.*

The offense charged by the December 17, 2003, indictment in this case is defined in 18 U.S.C. § 922(k) as follows:

6. Defendant had been in the local jail from March 27, 2004, until he was sentenced on

(k) It shall be unlawful for any person knowingly . . . to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

The penalty for a violation of § 922(k) is at 18 U.S.C. § 924(a)(1)(B), which provides for a fine and a term of imprisonment of not more than five years. Because of defendant's criminal history, the sentence in this case if defendant were to be convicted would approach the statutory maximum.

E. *No Reasonable Application of the Petite Policy Supports the Motion to Dismiss.*

As USA Roper acknowledged on December 30, 2004, the federal offense for which the grand jury indicted defendant is entirely different from the offense, including the enhancement feature, for which defendant was prosecuted in the state court. Dec. 30, 2004, Tr. at 15. Defendant will be guilty of the federal offense, if he committed it, without regard to the existence of the drug crime for which he was convicted in state court. The deadly weapon enhancement that was waived by the State when defendant pleaded guilty in state court was not based on the conduct described in the federal indictment. Rather, it was based on the entirely separate and independent conduct of using or exhibiting a firearm during the commission of the state court drug crime. Gov't's Dec. 30, 2004, Submission, Attach. 3, 2d page.

In further support of its conclusion that the *Petite* policy simply does not apply in this case, the court makes the following additional findings and conclusions that are compelled by the record:

July 12, 2004.

1. As the Supreme Court explained in *Rinaldi,* the *Petite* policy is intended to limit the exercise of the power to bring successive prosecutions for the same offense. *Supra* at 770–71. This federal prosecution is not for the same offense for which defendant was prosecuted in the state court. Even the enhancement paragraph in the state court indictment is entirely different from the offense charged by the federal indictment.

2. The Statement of Policy gives as its first purpose "to vindicate substantial federal interests through appropriate federal prosecutions." *Supra* at 771. Without question, there is a substantial federal interest in prosecuting those who possess weapons whose principal means of tracing the origin and transfers in ownership have been deleted or made appreciably more difficult to make out. *See United States v. Adams,* 305 F.3d 30, 34 (1st Cir.2002) (noting that the crime goes back to the Federal Firearms Act of 1938). The federal interest expressed by Congress when it created the federally indicted offense was not treated, much less vindicated, by the state prosecution. It simply was not the subject of, or touched upon, in the state proceedings. The obvious purpose of Congress in creating the federal offense was to implement the firearms identification statute found at 26 U.S.C. § 5842. Section 922(k) serves the vital public interest of enhancing the prospects that serial numbers will not be removed from firearms, thereby furthering the federal law enforcement interest of traceability of firearms in criminal investigations or prosecutions. That public interest was not recognized whatsoever in the state court proceedings.

3. The second stated purpose of the *Petite* policy is to "protect persons charged with criminal conduct from the burdens associated with multiple prose-cutions and punishments for substantially the same act(s) or transaction(s)." *Supra* at 771. There is not the slightest suggestion of prosecutorial harassment in this case. The prosecution of defendant for the offense charged against him by the federal indictment does not impose on him any inappropriate burden associated with prosecutions for his offense conduct, nor would punishment for the offense charged by the federal indictment impose any inappropriate punishment on defendant. The federal crimes and state crimes are entirely separate crimes. There is no certainty that the same gun was involved in the crimes. The court infers from the evidence that it was not. But, even if it was, the crimes are independent of each other (one associated with a drug transaction and the other associated with alteration of a firearm). Other than the prosecution now under way in this case, defendant has not been prosecuted for his federal offense conduct. He has received no punishment for the conduct charged against him by the federal indictment.

4. The third purpose of the *Petite* policy is "to promote efficient utilization of Department resources." *Id.* There is no contention that prosecution of defendant in this case would compromise efficient utilization of Department resources. Obviously it would not, else the government would not have put the grand jury to the trouble of returning the indictment and this court to the trouble of presiding over the case returned by the grand jury for over one year before the government decided to try to abandon the case. And, if the government thought its resources should not be devoted to prosecution of this case, presumably it would not have urged the court in its July 8, 2004, report not to dismiss the case because of

"the nature of the offense allegedly committed by defendant, Charles Addison Cockrell, his criminal history, and the efforts made and being made by ATF to locate and apprehend the defendant." Gov't's July 8, 2004, Rep. at 2.

5. The final stated purpose of the *Petite* policy is "to promote coordination and cooperation between federal and state prosecutors." *Supra* at 771. The goal of promoting coordination and cooperation between federal and state prosecutors would not be advanced by dismissal of the indictment. Instead, that goal would suffer a setback, because here the federal authorities made it quite clear to the state authorities at the outset that there would be a federal prosecution, and the state authorities indicated at that time that the state authorities would "defer to federal prosecution on any weapons related charges." Gov't's Jan. 6, 2005, Resp. at 10–11; Tr. of Jan. 10, 2005, hearing at 12–13. The federal indictment was returned first. Presumably, the state authorities did as they said they would do—not use the firearm with the obliterated serial number in the state proceedings. They had at least one other firearm they could use.

6. For the reasons given in paragraph numbers 2–5 above, none of the purposes for the *Petite* policy, as stated in the Department of Justice's Statement of Policy, apply here.

7. Where, as here, the *Petite* policy does not apply, prior approval of the appropriate assistant Attorney General is not required for prosecution of the case.

8. Nevertheless, pretending that a "substantial question" had arisen as to whether the *Petite* policy should apply, the government submitted the matter after-the-fact to Edgar Brown, a Department of Justice attorney "charged with the responsibility of providing guid-ance to the United States Attorneys Offices concerning application of the 'petite policy' concerning federal prosecutions." Jan. 3, 2005, Mem. at 10. Mr. Brown was not given enough information to enable him to reach an informed opinion as to whether the *Petite* policy applies, with the consequence that the opinion he rendered is meaningless. Having been informed that the government did not want to proceed to trial in this action, Mr. Brown determined that the prosecution should not be pursued. The government has not provided his rationale, as it would be hard-pressed to give a logical explanation for the decision.

F. *A Number of Factors Convinced the Court That the Government's Reliance on the Petite Policy Is Not in Good Faith.*

If the *Petite* policy had potential applicability, and if the government truly followed the policy, the government would have known in December 2003 of its potential applicability; the government would not have waited until the eve of trial, over one year later, before seeking the dismissal; and, the motion to dismiss would have clearly stated that it was grounded on the policy. Instead, the motion provides a series of disjointed allegations that conclude with the non-sequitur that since the State of Texas declined to punish defendant for possession of a deadly weapon, there is no compelling federal interest to warrant additional federal prosecution. Gov't's Mot. to Dismiss at 2.

If the motion to dismiss were being presented to the court and urged by the government in good faith, the government would have made candid disclosures in the motion and its later filings in support of the motion. Instead of unqualifiedly representing in the motion and its later filings that the same gun was involved in the

federal and state criminal proceedings, the government would have disclosed that more than one gun was found in the vehicle, that defendant admitted owning all of the guns in the vehicle and having placed them there, and that there might be an area of uncertainty as to whether the same gun was involved in both proceedings. Good-faith candor would have compelled the government to disclose at the outset that the state prosecutor was unable to say that the same gun was involved. Had the government been acting in good faith, the government would have disclosed to the court in the motion that the local authorities were told on December 2, 2003, by Agent Zimmer that the government planned to prosecute defendant for the federal offense, and that the local authorities indicated at that time that they would not prosecute defendant for a state offense involving the same firearm. The court reasonably infers from the prosecutor's lack of candor in the contents of the motion as well as in the contents of everything the prosecutor thereafter filed in an effort to persuade the court to grant the motion that the prosecutor was not proceeding in good faith.

Had the government thought the motion was a legitimate one, the government certainly would have candidly made a full disclosure to the court after the court questioned the propriety of the motion. Instead, the government withheld relevant information even through the January 10 hearing. All of the trial witnesses were present at the hearing. Surely the state court prosecutor would have attended the hearing if called upon to do so. Rather than to make a full disclosure so that the court could "be satisfied that the reasons advanced for the proposed dismissal are substantial," *Salinas*, 693 F.2d at 352 n. 17, the government chose at the hearing on the motion not to offer any evidence, Tr. of Jan. 10, 2005, hearing at 6. As a result, the court was required to develop the record that confirmed the total lack of substance of the motion.

When it became apparent at the hearing that there was no factual basis for the contention that the same gun was the subject of both the federal and state indictments, the government withdrew from that position, urging that "this motion should be granted because the federal prosecution and the state prosecution are based on the same traffic stop, the same act or transaction." Jan. 10, 2005, Tr. at 36–37. Of course, such a broad definition of "same act or transaction" would render the policy meaningless, as it would put in the hands of state authorities the decision whether federal crimes would be prosecuted.

Finally, for the reasons given above, there is no rational basis for a conclusion that the *Petite* policy applies here.

The only reasonable inference that can be drawn from the government's conduct in relation to the motion is that the government was not acting in good faith in initiating and pursuing it. The court finds and concludes that the *Petite* policy does not apply to this case, and that it does not provide justification for seeking dismissal. The contention of the government that the *Petite* policy applies is frivolous, irrational, and devoid of any basis in fact. That contention has not been made in good faith. USA Roper conceded that if the *Petite* policy does not apply, there is no other policy that would justify the requested dismissal. *Supra* at 765.

### IV.

#### Conclusion

The actions of the prosecutor in seeking dismissal of this case under the facts disclosed by the record "clearly indicate a betrayal of the public trust." *United States v. Hamm,* 659 F.2d at 629. Whatever the prosecution's undisclosed reasons

for seeking dismissal might be, the court is satisfied, and finds, that the prosecutor in seeking dismissal of the indictment "is clearly motivated by considerations other than his assessment of the public interest." *Id.* at 630. The prosecutor has not supplied sufficient reasons—"reasons that constitute more than a mere conclusionary interest," *United States v. Salinas,* 693 F.2d at 352, for dismissal of the indictment. Rather, "the motion to dismiss contravenes the public interest because it is not made in good faith." *Id.* Therefore, the court concludes that the motion should be denied.

## V.

### *Order*

The court ORDERS that the government's motion to dismiss the indictment be, and is hereby, denied.