IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-30009

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

TERRANCE LASH, also known as Breeze, also known as T

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:03-CR-135-4

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Sentenced to life imprisonment for his role in both a conspiracy to distribute cocaine and a murder, Terrance Lash challenges his conviction on numerous pre-trial bases. The issues arise primarily out of the confession Lash provided in a holding cell to a co-conspirator. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

While imprisoned in 1995 on a drug conviction, Lash met Rahsaan Johnson; they discussed working together to distribute cocaine in the New Orleans area. That plan was implemented upon their being released.

Johnson served as Lash's cocaine source until both were arrested in 2003. Earlier, in 2000, Johnson began receiving larger quantities of cocaine from a new supply source in Houston, Texas, increasing to 50 to 60 kilograms weekly in 2001 and 2002. Johnson divided the cocaine among Lash and other New Orleans-area distributors. Lash provided cocaine to others, including street-level dealers Tamira Durand and Eddie Fatheree.

Durand and Fatheree murdered Zachary Marcel in August 2002, in furtherance of the drug trafficking. By late 2002, the Government was investigating that murder; a federal grand-jury investigation began in early 2003. Demetra Norse, a friend of Durand, testified before that grand jury in April 2003, concerning her knowledge of Durand's and Fatheree's drug trafficking.

Norse informed Durand of her grand-jury testimony. Durand, in turn, informed Lash. Durand and Lash agreed not to take action unless Durand was arrested.

That May, the grand jury in a case before United States District Judge Zainey returned an indictment against Durand; she was arrested. As a result, Lash hired an assassin, Donald Sylvester, who murdered Norse that June, having been led to the victim by Lash.

Another co-conspirator, John Gage, was arrested following a random traffic stop in Houston that July. Police seized from his vehicle 77 kilograms of cocaine bound for New Orleans. Gage cooperated with law-enforcement officers following his arrest, explaining his role in the conspiracy was to transfer drugs and money between Houston and New Orleans.

Based on information obtained from Gage, other conspirators, including Lash, were arrested that September (2003). By late September, Lash and Gage had been indicted for conspiring to distribute cocaine. That case was assigned to United States District Judge Lemmon.

A few months earlier, in July 2003, Johnson had been arrested by United States Marshals; he began cooperating with the Government that November. Johnson told investigators about the drug-trafficking conspiracy, said Lash was responsible for Norse's murder, and offered to wear a wire to record incriminating statements by Lash.

On 20 November 2003, in the case before Judge Zainey, involving drug-conspiracy and murder charges against Durand and Fatheree, the grand jury returned a superseding indictment adding Lash and Johnson as defendants. Lash was charged with the Norse murder in December 2004.

Approximately two weeks after Lash and Johnson were added to the case before Judge Zainey, the indictment against Lash was dismissed on 9 December in the case before Judge Lemmon. The Government's motion to dismiss Lash from that case explained all of Lash's co-defendants in it had pleaded guilty. The Government maintained the case before Judge Zainey was the older of the two cases and the more appropriate case in which to prosecute Lash. That case involved both drug trafficking and murder.

In November and December 2003, Johnson attempted to record conversations with Lash while they were in a holding cell, awaiting hearings in the case before Judge Zainey. Both attempts failed due to poor sound quality. Johnson's third attempt, on 17 February 2004, was successful; Lash discussed his role in the Norse murder and named Sylvester as Norse's assassin. That March, the Government confronted Lash and his attorney with the recording.

Thereafter, during meetings with the Government, Lash implicated himself in the Norse murder and agreed to record a conversation with Sylvester. Lash was granted use immunity for these proffers.

Later that month, Lash's request for a new attorney was granted. Lash's new counsel, both pre-trial and at trial, sought: wide-ranging discovery; dismissal of indictments; severance of the drug-conspiracy and murder charges; and suppression of Lash's recorded confession. Lash's counsel claimed: a Kastigar violation (Government must prove the evidence proposed to be used in later prosecution of person granted immunity is derived from a legitimate source wholly independent of compelled testimony); a violation of Federal Rule of Criminal Procedure 48(a) (district court has discretion to determine whether Government's indictment-dismissal request is made in good faith); and Lash's confession was the result of outrageous Government conduct, trickery, entrapment, and coercion.

Following a two-week trial in June 2006, during which Lash and Johnson testified, Lash was convicted for his role in the drug conspiracy and for related murder and weapons charges. He was sentenced to life imprisonment.

II.

As noted, Lash and Johnson testified at trial. Lash does not contest the sufficiency of the evidence or his sentence. Instead, he challenges his conviction on six pre-trial bases: (1) the denial of evidentiary hearings and discovery requests; (2) the admission of his recorded confession; (3) the failure to address his claimed violation of his Sixth Amendment right to counsel that occurred, according to Lash, when the Government recorded that confession; (4) the denial of his motion to sever the drug-conspiracy, from the murder, count; (5) the denial of his motion to dismiss the indictment for the alleged Rule 48(a) violation; and (6) the rejection of his claimed Kastigar violation.

A.

Lash maintains the district court improperly failed to hold evidentiary hearings on the admissibility of his recorded confession and on his motion to dismiss based upon the asserted Rule 48 violation. He also challenges rulings on various discovery requests. Discovery rulings and the denial of an evidentiary hearing are reviewed for abuse of discretion. United States v. Powell, 354 F.3d 362, 370 (5th Cir. 2003); United States v. Gutierrez, 343 F.3d 415, 421 (5th Cir. 2003); United States v. Webster, 162 F.3d 308, 336 (5th Cir. 1998).

1.

The district court denied Lash's motion to dismiss for a Rule 48 violation, having considered the Government's response, supporting exhibits from both sides, and extensive oral argument. The developed record was sufficient to support that ruling, and Lash has failed to articulate a need for further hearings on the matter. In this regard, Lash fails to justify his claim that meaningful discovery was denied.

A party seeking disclosure of grand-jury materials must meet the burden of showing a particularized need for their production. In re Grand Jury Testimony, 832 F.2d 60, 62 (5th Cir. 1987). Lash failed to meet that burden, and failed to show other discovery requests were justified. The district court did not abuse its discretion either by relying on the available record, rather than holding additional hearings, or by denying Lash's requests for further discovery.

2.

When admission of a confession is contested as being involuntary, the defendant "is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined". United States v. Guanespen-Portillo, 514 F.3d 393, 398 (5th Cir. 2008) (quoting Jackson v. Denno, 378 U.S. 368, 380 (1964)), cert. denied, No. 07-

9249, 2008 WL 370345 (17 Mar. 2008). Contrary to Lash's assertion, an evidentiary hearing was not required.

The admissibility of confessions is governed by 18 U.S.C. § 3501. Pursuant to subpart (e), a confession includes "any self-incriminating statement made or given orally". Obviously, Lash's statement to Johnson fits this definition.

Regarding the district judge's obligation to decide whether a confession is voluntary, subpart (a) provides:

> In any criminal prosecution brought by the United States . . . , a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

18 U.S.C. § 3501(a). Subpart (a) of § 3501 has been held, in Dickerson v. United States, 530 U.S. 428, 444 (2000), unconstitutional to the extent it negates Miranda; otherwise, that subpart and other subsections of the statute continue to be applied. Guanespen-Portillo, 514 F.3d at 401 n.3.

One of those provisions applicable to Lash's holding-cell statement is found in subpart (d), which states in relevant part:

> Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone . . . .

18 U.S.C. § 3501(d) (emphasis added). "[U]nder [§] 3501(d), no [evidentiary] hearing is required for a [voluntary] statement which was not the result of interrogation". United States v. Diezel, 608 F.2d 204, 207 (5th Cir. 1979) (internal quotation marks and footnote omitted).

As discussed, Lash's incriminating statement—which, consistent with § 3501(e), both sides describe as a confession—was made to co-conspirator Johnson, who was recording the conversation while the two were in a holding cell. In general, statements of this kind, volunteered to a cellmate, do not trigger the requirements of an evidentiary hearing. See United States v. Lambros, 564 F.2d 26, 31 (8th Cir. 1977) (defendant volunteered information to a cellmate; such informal statements do not trigger protections).

Again, on this record, an evidentiary hearing was not required. The district court allowed voluminous briefing and lengthy argument on these matters, even inviting further briefing as to why an evidentiary hearing might be necessary. As further discussed infra, concluding the Government acted in good faith and Lash voluntarily confessed to co-conspirator Johnson, the district court properly determined an evidentiary hearing was unnecessary.

Along this line, at a hearing before Judge Zainey in May 2006, Lash's counsel argued that, through the culmination of "a whole litany of deceptions", the Government crossed the line from an acceptable level of deception, as discussed infra, into a level that was so overbearing as to infringe on Lash's due-process rights. Those alleged deceptions included: Johnson's behavior as a confidential informant; his role in arranging with Lash a plot to commit murder; the transfer of Lash to the case before Judge Zainey; and the Government's role in placing Lash in a holding cell with Johnson.

Against this backdrop, Judge Zainey, of course, considered Lash's statement. Judge Zainey noted Lash's assertions were points to raise at trial, but they did not necessarily support the claim an evidentiary hearing was required. (Although, in this court, Lash's counsel devoted most of his oral argument to the evidentiary-hearing issue, he provided less than one page, in his briefs filed with our court, addressing the need for an evidentiary hearing.)

7

B.

Lash claims the Government's use of cooperating co-conspirator Johnson to record incriminating statements violated his due-process rights under the Fifth Amendment because Lash was coerced into making the statement through outrageous Government conduct. In other words, as discussed above, at issue is whether Lash's statement was voluntary. As noted, although the district court gave this question extensive consideration, it did not grant the requested evidentiary hearing.

In reviewing a ruling on a motion to suppress, whether a confession was voluntary is a question of law, reviewed de novo. United States v. Santiago, 410 F.3d 193, 202 (5th Cir. 2005). To determine involuntariness vel non, "a reviewing court must look to whether the defendant's capacity to resist was overborne to such a degree that the resulting confession could not be said to be the product of the accused's own self-determination". Id.

It is well-established that, in the course of a criminal investigation, a defendant may be deceived or tricked into confessing. E.g., Illinois v. Perkins, 496 U.S. 292, 297 (1990) (an undercover agent posing as an inmate in order to obtain incriminating statements, voluntarily given by another inmate, about a murder did not violate Fifth Amendment principles); Hoffa v. United States, 385 U.S. 293, 304 (1966) (placing an undercover agent near a suspect to gather incriminating information about his role in a jury-tampering case did not violate Fifth Amendment principles); United States v. Bell, 367 F.3d 452, 461 (5th Cir. 2004). "When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking." Perkins, 496 U.S. at 296 (citation omitted).

As reflected in his statement, Lash did not know Johnson was cooperating with the Government, nor that his holding-cell conversation was being recorded; he spoke freely with his co-conspirator, his cellmate at the moment. Lash's

conclusory assertions regarding claimed coercion, such as being intimidated because of Johnson's description, in the recording, of a brutal murder he previously committed, do not show error. (For example, Lash was laughing and joining in the description of that murder.)

Lash provides no support for his claim that the site for the recordings, a holding cell, distinguishes this case from the other jailhouse-confession cases discussed supra. Similarly, Lash can point to no specific infirmities in the indictment which resulted in Lash's and Johnson's being placed in the same cell. There is no basis for Lash's allegations that his due-process rights were violated by outrageous Government conduct. "Such a violation will only be found in the rarest circumstances", and the district court correctly held the facts at hand did not rise to such an extreme level. United States v. Johnson, 68 F.3d 899, 902 (5th Cir. 1995).

## C.

Lash claims his Sixth Amendment right to counsel was violated when the Government, through cooperating co-conspirator Johnson, recorded Lash's incriminating statements, describing his role in the Norse murder. A claimed Sixth Amendment violation is reviewed de novo. See Mann v. Scott, 41 F.3d 968, 974 (5th Cir. 1994).

As Lash recognizes, the Sixth Amendment right to counsel is offense-specific; because of law-enforcement's need to investigate additional offenses, the right to counsel does not attach to every offense a defendant may have committed. Sixth Amendment protections prohibit the Government from interrogating a suspect regarding a charged, but not an uncharged, offense. Texas v. Cobb, 532 U.S. 162, 174 (2001). When Johnson recorded the conversation, Lash had not been charged for the Norse murder (he was charged ten months later). The district court did not err in finding the Sixth Amendment right to counsel did not attach to the investigation of that murder.

Recognizing this, Lash urges an exception to Cobb: to revert to prohibiting interrogation about crimes factually-related to an already-charged offense. This exception, however, was rejected by Cobb. Id. at 167-68.

D.

Lash claims the drug-conspiracy charges should have been severed from the murder charges. A severance-motion denial is reviewed for abuse of discretion. E.g., United States v. Chagra, 754 F.2d 1186, 1188 (5th Cir. 1985). "To demonstrate an abuse of discretion, the defendant bears a heavy burden of showing specific and compelling prejudice, resulting in an unfair trial." Id. (citations and internal quotation marks omitted). In addition, "[t]his prejudice must be of a type 'against which the trial court was unable to afford protection'". United States v. Simmons, 374 F.3d 313, 317 (5th Cir. 2004) (quoting United States v. Mann, 161 F.3d 840, 863 (5th Cir. 1998)).

It is uncontested that the drug-conspiracy and murder charges were properly joined because they were part of a common scheme. Pursuant to Lash's assertion that portions of his recorded statement (confession) might incriminate him in the drug conspiracy, the district court undertook a detailed, painstaking process to ensure those challenged portions were not admitted in evidence (were redacted).

In so doing, the court entertained all objections to the content of the confession, resulting in a heavily-redacted version that addressed Lash's concerns. Lash has failed to show the requisite "clear, specific and compelling prejudice that resulted in an unfair trial" by the admission of the redacted confession. Simmons, 374 F.3d at 317; see also Chagra, 754 F.2d at 1188.

Furthermore, Lash fails to show prejudice against which the district court was unable to afford protection. The court limited the use of the recorded confession by: instructing the Government it could be admitted only to assist the jury's understanding of Lash's implication of himself in the Norse murder; and

providing limiting instructions to the jury, directing it to consider each count, and the evidence pertaining to it, separately. "Any possible prejudice [can] be cured with proper instructions [because] juries are presumed to follow their instructions." United States v. Bullock, 71 F.3d 171, 175 (5th Cir. 1995) (citing Zafiro v. United States, 506 U.S. 534, 540-41 (1993)).

E.

Lash contends the dismissal, without prejudice, of his drug-conspiracy case before Judge Lemmon should be recharacterized as a dismissal with prejudice, based on a claimed violation of Rule 48(a) (Government "may, with leave of the court, dismiss[, inter alia,] an indictment"). In requiring the Government to seek leave of court for such dismissal, Rule 48(a) gives the court discretion over its propriety. United States v. Welborn, 849 F.2d 980, 983 (5th Cir. 1988); United States v. Salinas, 693 F.2d 348, 351 (5th Cir. 1982).

In exercising that discretion, the district court is limited to determining whether the request was made in bad faith. Welborn, 849 F.2d at 983. Bad faith exists when, in seeking dismissal, the Government is motivated "by considerations clearly contrary to the public interest and the public interest is not served by harassing a defendant". Id. (quoting Salinas, 693 F.2d at 351 & n.15) (internal quotation marks omitted). When considering a Rule 48(a) motion to dismiss, a court must begin with the assumption that the Government acted in good faith. Id. "This presumption is rooted in a proper respect for the constitutional division of power between the executive and judicial branches of government." Id. (citing United States v. Hamm, 659 F.2d 624, 628-29 (5th Cir. 1981)).

Directly applicable to the situation at hand are two procedural rules, established by our court, for addressing challenges to Rule 48(a) motions to dismiss without prejudice:

> First, if a defendant, without justification, does not contest dismissal[,] the presumption of good faith permits the court to dismiss without prejudice and the defendant waives his right to later object to the government's motives. Second, if a defendant contests dismissal and the district court errs by not requiring the prosecution to furnish more than a conclusory reason to support its motion, the dismissal must be treated as though it were with prejudice only where the prosecution fails to offer sufficient justification for seeking dismissal when it reindicts or the error prejudiced the defendant's ability to attack the prosecutor's motives.

Welborn, 849 F.2d at 985.

Therefore, under the first of these rules, we must determine whether Lash's failure, when it was requested, to contest the dismissal of the indictment in the case before Judge Lemmon bars his contesting it here. "Whether deliberate or not, unjustified failure to contest a motion to dismiss waives any right to later complain that the prosecution requested dismissal in bad faith." Welborn, 849 F.2d at 983. Generally, the defendant is required to object to dismissal both when the Government moves to dismiss (here, in the case before Judge Lemmon), as well as upon reindictment (here, in the case before Judge Zainey). United States v. Reyes, 102 F.3d 1361, 1367 (5th Cir. 1996). Such an objection enables the Government to respond by articulating a good-faith reason for the requested dismissal. Id. at 1367 n.9.

1.

The Government maintains the good-faith presumption should attach, and Lash should be barred from challenging the dismissal of the indictment in the case before Judge Lemmon, because Lash failed to object when that dismissal was requested. Lash responds: because he was not given an opportunity to object to the Government's dismissal motion, no waiver occurred.

Indeed, although Lash's counsel was informed the Government would seek dismissal of the indictment on 1 December 2003, the motion was not filed until 2:10 p.m. on 8 December. A copy of the motion was mailed to Lash's counsel.

The next day, Judge Lemmon, without a hearing, granted the motion. It is unclear, however, when Lash's counsel received notice of that motion. We will assume the Government failed to provide Lash with adequate "notice of the filing of its motion to dismiss[, which] excuses his failure to contest the motion at that time". Id. at 1367.

In this regard, it is of no moment that the Government put Lash's counsel on notice it intended to seek dismissal of the indictment on 1 December, and that Lash's counsel did not then object to the dismissal upon such oral notice. Obviously, Lash's counsel was under no obligation to preemptively contest a motion to dismiss that had not been filed. That obligation did not arise until it was filed; and, again, we assume counsel was not given sufficient opportunity to object. Therefore, because Lash is excused from contesting the dismissal before Judge Lemmon, and because he did contest the dismissal upon reindictment, in a motion to dismiss, before Judge Zainey, he is not barred from asserting a Rule 48(a) challenge here.

2.

Accordingly, at issue is whether the district court required the Government to satisfy its burden of production by providing "sufficient reasons—reasons that constitute more than a mere conclusory interest"—for its seeking dismissal of the indictment before Judge Lemmon. Welborn, 849 F.2d at 983 (internal citation and quotation marks omitted). If the Government did satisfy that burden, Lash had to provide "an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest". Id. at 984 (citing Hamm, 659 F.2d at 631). If the district court fails, however, to require the Government to meet its burden of production, the dismissal of the indictment may be recharacterized as being with prejudice if either: "the defendant (1) overcomes the presumption of good faith or (2) has been prejudiced in his ability to attack the prosecutor's motives due to the trial

court's failure to require submission of adequate reasons before dismissing the prior indictment". Id.

Before Judges Lemmon and Zainey, the Government satisfied its burden. As discussed supra, it maintained it had sufficient evidence to demonstrate Lash was a central figure in the drug conspiracy in both cases but intended to proceed in the earlier case (before Judge Zainey) rather than the later (before Judge Lemmon) because the co-defendants in the case before Judge Lemmon had pleaded guilty, whereas the co-defendants in the case before Judge Zainey awaited trial. As stated, the Government provided the necessary sufficient, non-conclusory justification to satisfy its burden of production. Unlike Welborn, in which the Government offered no justification other than that the dismissal would "serve the ends of justice", id. at 982, the Government's justification for dismissing the indictment in the case before Judge Lemmon clearly promotes, inter alia, judicial economy.

Therefore, the Government's having met its burden of providing a sufficient justification for dismissal, the burden shifts to Lash to rebut the good-faith presumption by demonstrating "an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest". Id. at 984 (internal quotation marks omitted) (quoting Hamm, 659 F.2d at 631). Lash, however, offers no such reasons. Rather, he makes conclusory assertions that the dismissal constituted forum shopping, and that the Government violated the Justice Department's Petite policy (precluding successive federal prosecutions based on same transaction without prior approval of assistant Attorney General). Lash offers no support, however, of asserted forum shopping. Moreover, the Petite policy is an internal rule, which criminal defendants may not invoke to bar prosecution by the Government. United States v. Rodriguez, 948 F.2d 914, 915 (5th Cir. 1991). Therefore,

dismissal, without prejudice, of the indictment in the case before Judge Lemmon was proper.

### F.

Finally, Lash claims his proffered testimony concerning his role in the Norse murder and the drug conspiracy, for which he was granted use immunity, impermissibly formed the basis for the extended duration of the drug conspiracy, as charged in the fifth superseding indictment.  Along that line, Lash asserts the Government failed to meet its affirmative burden of demonstrating none of the immunized information was used by the Government to charge the extended conspiracy.  See Kastigar v. United States, 406 U.S. 441, 460 (1972) (imposing on prosecution an "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony").  The interpretation of a grant of immunity under Kastigar is a question of law, reviewed de novo; factual findings relating to the Kastigar inquiry are reviewed only for clear error.  E.g., United States v. Martin, 332 F.3d 827, 830 (5th Cir. 2003).  In considering this issue, the district court found Lash "received only direct use immunity during his interviews with the Government on March 2 . . . and . . . 8, 2004".  (Emphasis added.)

"Direct use immunity" is the most limited form of immunity because it "allows the [G]overnment to use information derived from a witness's statements but forbids the use of the information in those statements against the witness in subsequent prosecution".  United States v. Capozzi, 486 F.3d 711, 720 n.3 (1st Cir. 2007); see also United States v. Castaneda, 162 F.3d 832, 834 n.1 (5th Cir. 1998) (distinguishing direct use immunity from derivative use immunity).  "[D]erivative-use immunity" is "[i]mmunity from the use of the compelled testimony (or any information derived from that testimony) in a future prosecution against the witness."  United States v. Brown, 298 F.3d 392, 410

n.21 (5th Cir. 2002) (quoting BLACKS LAW DICTIONARY 754 (7th ed. 1999)) (internal quotation marks omitted).

The district court's finding Lash was granted only "direct use immunity" precludes relief under Kastigar. A holding to the contrary would negate the distinction between direct and derivative-use immunity. As explained, direct-use immunity does not preclude the Government's relying upon information derived from the witness' statements. Even assuming Lash is correct that the duration of the conspiracy was extended based on information learned from his proffers, this was acceptable because, again, direct, not derivative, use immunity was granted. Given Lash's failure to demonstrate the district court clearly erred in finding "direct-use immunity", he provides no basis for a Kastigar violation.

III.

For the foregoing reasons, the judgment is AFFIRMED.

DENNIS, Circuit Judge, dissenting.

I agree with much of the majority opinion in this case. However, I respectfully disagree with the majority's failure to vacate and remand for an evidentiary hearing on the voluntariness of the defendant's confession in accordance with Jackson v. Denno, 378 U.S. 368 (1964) and United States v. Renteria, 625 F.2d 1279 (5th Cir. 1980). For the following reasons, I disagree with the majority's conclusion that Jackson and Renteria do not apply to this case. Admittedly, as the majority correctly notes, the current record contains evidence that tends to show that the confession was not coerced nor involuntary, but the district court never conducted an evidentiary hearing on the issue nor made a specific factual finding of voluntariness as required by the Supreme Court in Jackson and our own circuit precedent in Renteria. We may not overlook the constitutional interpretations and requirements of those decisions and make a novel harmless error finding, viz., that presumably the district court would find voluntariness in the event it was required to conduct a Jackson evidentiary hearing.

There are two independent and overlapping sources of authority that compel district courts to provide evidentiary hearings for defendants that object to the use of involuntary confessions. First, in Jackson, the Supreme Court stated that "[e]qually clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." 378 U.S. at 376-77 (emphasis added). As this court has noted, "the Supreme Court held that when there is a factual issue about the voluntariness of a confession, the trial court must make a determination of voluntariness, including the resolution of any relevant disputed facts." Renteria, 625 F.2d at 1282-83. This hearing resolves factual disputes surrounding the voluntariness of the confession and

17

therefore is an evidentiary hearing. See, e.g., United States v. Bailey, 468 F.2d 652, 660-61 (5th Cir. 1972) ("The court below held the evidentiary hearing required by Jackson v. Denno, and found that the voluntariness of appellant's confession was shown beyond a reasonable doubt."). We have confirmed that this is a constitutional due process right. See Hackathorn v. Decker, 369 F.2d 150, 157 (5th Cir. 1966).

As an alternative route, Congress in 18 U.S.C. § 3501 attempted a statutory codification of the Jackson procedure and also attempted to provide guidance as to when trial courts must conduct voluntariness hearings. The majority opinion cites to an old Eighth Circuit case that relies on this statutory authority, 18 U.S.C. § 3501(d), to conclude that a Jackson hearing is not required in this case. However, relying on the statute does not resolve whether a hearing is required under Jackson and the due process clause. As the Supreme Court in Dickerson v. United States held, 18 U.S.C. § 3501 does not control the judiciary's interpretation of the constitutional rights Congress attempted to codify in that statute (including the constitutional rights under Miranda and Jackson). 530 U.S. 428, 437-48 (2000) ("Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution. . . . But Congress may not legislatively supersede our decisions interpreting and applying the Constitution.") (emphasis added).[1]

Taking a cue from Dickerson, a hearing is arguably required by the holding in Jackson as a right under constitutional due process in spite of the statutory language in 18 U.S.C. § 3501. The defendant is asserting his right to a hearing under the Constitution as interpreted by Jackson and not merely his

---

[1] The majority opinion cites to United States v. Guanespen-Portillo, 514 F.3d 393, 401 n.3 (5th Cir. 2008) for the proposition that "subsections of [section 3501 other than 3501(a) in certain respects] continue to be applied." However, that footnote in Guanespen-Portillo cites to no cases that address the continued applicability of 18 U.S.C. § 3501(d) post-Dickerson.

statutory right under 18 U.S.C. § 3501. The Supreme Court decision in Arizona v. Fulminante, 499 U.S. 279, 287-88 (1991) casts serious doubts on the continued validity of section 3501(d) as a codification of the constitutional principles in Jackson.[2] Contrary to section 3501(d), Fulminante contemplates challenges to the voluntariness of confessions that are given in conversations with Government informants. In Arizona v. Fulminante, the Supreme Court held that a Government informant can act as a Government agent and create sufficient coercion to render a confession involuntary. 499 U.S. 279, 287-88 (1991); see also Lam v. Kelchner, 304 F.3d 256, 264-66 (3rd Cir. 2002) (finding a confession involuntary and inadmissible even though the confession was elicited during a conversation with undercover police officers posing as fellow gang members at a restaurant); United States v. McCullah, 76 F.3d 1087, 1100-02 (10th Cir. 1996) (finding a conversation with a Government informant as involuntary). In Beaty v. Stewart, 303 F.3d 975, 993-94 (9th Cir. 2002) ("Beaty I") and Beaty v. Schriro, 509 F.3d 994, 1002 (9th Cir. 2007) ("Beaty II"), the Ninth Circuit ordered an evidentiary hearing to determine the voluntariness of the defendant's confession to his therapist in prison, even though it ultimately found the situation distinguishable from Fulminante and concluded that the confession was voluntary.[3] Therefore, the issue of the voluntariness of a confession can still be raised even though a confession was rendered to a Government informant. As such, the rule of Jackson, would apparently apply: "[e]qually clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination

---

[2] The defendant does assert that his case is similar to Fulminante.

[3] Moreover, older cases cast some doubt on whether § 3501(d)'s requirement comports with the Jackson holding. See, e.g., United States v. Bernett, 495 F.2d 943, 958 (D.C. Cir. 1974) (Leventhal, J.) (denial of rehearing en banc).

uninfluenced by the truth or falsity of the confession." 378 U.S. at 376-77 (emphasis added). This case lies at the uncertain intersection of Jackson, Fulminante, and Dickerson, which has not been directly addressed by any circuit court.

The defendant asserted below that the confession was involuntary because he felt threatened by the government informant; moreover, taped interactions between the defendant and the government informant prior to the confession were inaudible. It is unclear without an evidentiary hearing whether the government informant used threats in those prior interactions, like in Fulminante, to coerce the defendant to talk. As there is a relevant factual dispute, a hearing must be provided under Jackson to resolve a factual issue.[4]

For these reasons, I would remand for a Jackson hearing. Only after the trial court determines that the confession was indeed voluntary, can the panel be constitutionally authorized to affirm the conviction and conclude that the failure to hold a Jackson hearing before the conviction was harmless error. Renteria, 625 F.2d at 1283-284. Accordingly, I respectfully dissent.

---

[4] The majority opinion states "[i]n reviewing a ruling on a motion to suppress, whether a confession was voluntary is a question of law, reviewed de novo." (citing United States v. Santiago, 410 F.3d 193, 202 (5th Cir. 2005)). In Santiago, the trial court denied the defendant's motion to suppress his written statement after a full evidentiary hearing at which the court determined that the statement was voluntary. Id. at 196. We then reviewed this voluntariness finding, determined after a full evidentiary hearing, de novo. Id. at 202.